[Civ. No. 2546. Fifth Dist., June 15, 1976.]

JOYCE BOYKIN ATKISSON, Plaintiff and Appellant, v.
KERN COUNTY HOUSING AUTHORITY et al.,
Defendants and Respondents.

## COUNSEL

Thomas M. Sobel and Richard G. Fathy for Plaintiff and Appellant.

Mack, Bianco, Means, Mack & Stuart and Harvey H. Means for Defendants and Respondents.

## OPINION

**ZEFF, J.**\*—This action was brought by the appellant on behalf of herself and all others similarly situated for declaratory and injunctive relief against the respondents.

On May 4, 1973, appellant filed a complaint for declaratory and injunctive relief challenging the validity of respondents' policy of excluding from its housing projects families whose heads of household are not related by blood, marriage or adoption. This case was tried on a stipulation of facts which we summarize in part.

Appellant is a 33-year-old divorcee who, since November 9, 1971, has resided with her six children in a low income public housing unit in Bakersfield operated by the respondents. Under the terms of section 2 of the lease agreement, the lease is "subject to the . . . eligibility requirements . . . and the regulations of the Authority in the exercise of its lawfully constituted powers and duties. . . ."

In section 3 the lease provides: "Use and occupancy of the dwelling is restricted to the specific persons listed on the application for the dwelling."

---

\*Assigned by the Chairman of the Judicial Council.

Since July 1972, an adult male, unrelated to appellant by blood, marriage or adoption, ·has resided with appellant in a state of cohabitation as if husband and wife.

The respondent Housing Authority, in its statement of policies, section X.A forbids any and all low income public housing tenants from living with anyone of the opposite sex to whom the tenant is not related by blood, marriage, or adoption. This policy is based upon respondents' view that (a) such cohabitation is immoral; (b) that such cohabitation results in a continuous turnover of cohabitants which results in management problems such as computation of rents; (c) respondents' view that its 31 years of experience makes clear that (1) a cohabitant tenant is or becomes less responsible to respondents, and (2) is a poor influence on the cohabitant tenants as families; and (d) respondents' view that unless cohabitation is prohibited, there will be (1) a demoralizing effect on tenancy relations, and (2) the number of cohabitants could not be controlled.

In July of 1972 respondents were notified by appellant's former husband that she was cohabiting with an unrelated adult male. The respondents then initiated efforts to evict appellant on the *sole* basis that she was violating respondents' policy in section X.A against cohabitation. Here we deem it advisable to quote literally from the formal stipulation of facts:

"6. When the defendants were thus informed of the fact that the plaintiff was living with an adult male to whom she was not related by blood, marriage or adoption, they initiated efforts in August 1972, to evict the plaintiff *solely* because of her violation of the defendants' policy prohibiting any and all such cohabitation, as set forth in Section X.A of the defendant Housing Authority's Statement of Policies.

" . . . . . . . . . . . . . . . . . .

"8. But for Stipulation No. 11 below, defendants have been, are now and will continue to evict any and all low income, public housing tenants within the defendants' control *solely* because such tenants are found to be cohabiting with adults to whom they are not related by blood, marriage or adoption.

" . . . . . . . . . . . . . . . . . .

"10. The plaintiff represents the class of all present and future low income families who would be eligible for occupancy but for the fact that the head of household is cohabiting with someone to whom he/she is not married. Questions of law and fact common to the entire class are presented by defendants' proposed eviction of plaintiff for living with a man not her spouse. The class is so numerous that joinder of all members is impracticable. The claim of plaintiff is typical of her class and she will adequately and fairly represent the class.

"11. The defendants agree not to cause the eviction by way of informal or formal procedures, through themselves or any of their agents, of any low income tenants because he or she is cohabiting with someone not his/her spouse until final judicial dispensation [sic] of this issue is reached in this case." (Italics added.)

A grievance hearing was held at which respondents objected to appellant's continued residence in the housing unit on the sole ground as indicated. No other tenants objected at the hearing to appellant's cohabitation. The hearing officer found that appellant was in violation of section X.A and further found that because of such violation appellant was also in violation of sections 2 and 3 of the lease agreement.

The respondents have conceded throughout that there is an actual controversy, and that the petition as filed by appellant was properly presented as an action for declaratory relief and injunction and that it included all of the essential elements appropriate to such a proceeding. Despite the stipulation that the matter was presented on the basis of a stipulation of facts, the only issue being whether appellant could be evicted solely because of her violation of the respondents' policy prohibiting cohabitation as set forth in section X.A of the Housing Authority's Statement of Policies, and although all parties in interest were seeking a determination of the broad constitutional questions challenging the validity of the respondents' policy regulation, the trial court failed to address itself to the issues so presented and elected instead to view the case as an administrative mandamus proceeding. The trial court applied the guidelines of *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] and determined that the case involved a "privilege" and not a "fundamental vested right," and considered only the question of whether the hearing officer's recommendation was supported by substantial evidence, and refused to deal with appellant's challenges to the legality of the policy of respondents on the basis of constitutional invalidity.

Rather than treating the case as unadjudicated and remanding the matter for consideration and determination by the trial court, in the interest of judicial economy, we elect to review the case and to decide the constitutional questions presented.

While stated somewhat differently in appellant's brief on appeal we discern her position to be that the X.A policy of respondents violates HUD regulations and in doing so, denies to the appellant the equal protection of law, due process, invades the right of privacy without a compelling state interest and violates a tenant's civil rights as protected by state law.

At the outset we hold that the rule of *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* has no application to the case at bench. This was an action for declaratory and injunctive relief and not, as construed by the trial court, an administrative mandamus proceeding involving a conflict of facts. Unlike the posture in which *Strumsky* was presented where the court was concerned with a review of the evidence to determine whether there was an abuse of discretion by an administrative agency in that its findings were not supported by substantial evidence; here there are no contested issues of fact. The only issues here are questions of law, and since this case was submitted on a stipulation of facts which completely established the factual premise, the rule of the *Strumsky* case is irrelevant.

 In a circular dated December 17, 1968, the assistant secretary for renewal and housing assistance, HUD, a Mr. Don Hummel, set forth "Standards for Establishment and Administration of Admission and Occupancy Regulations." The circular states that one of its purposes is "to set forth minimum admission and continued occupancy standards to be followed by Local Authorities. . . ." As two of its standards, the circular lists the following:

"b. A Local Authority shall not establish policies which *automatically* deny admission or continued occupancy to a *particular class,* such as unmarried mothers, families having one or more children born out of wedlock, families having police records or poor rent-paying habits, etc.

"c. To determine whether applicants or occupants should be admitted to or remain in its project, a Local Authority may establish criteria and standards bearing on whether the conduct of such tenants (in an

applicant's present or prior housing, or in occupancy in the case of present tenants) does or would be likely to interfere with other tenants in such a manner as to materially diminish their enjoyment of the premises. Such interference must relate to the actual or threatened conduct of the tenant and not be based *solely* on such matters as the *marital status* of the family, the legitimacy of the children in the family, police records, etc." (Italics added.)

The suspect policy of respondent X.A has been set out *ante.* It is clear that a circular such as that under consideration here as issued by the assistant secretary for renewal and housing assistance, HUD, is binding upon local housing authorities when the circular has been written in mandatory language as is the case here. (*Thorpe* v. *Housing Authority* (1969) 393 U.S. 268 [21 L.Ed.2d 474, 89 S.Ct. 518].) Moreover, the circular in this case expressly states that "it will be incorporated in the low-rent manual" which manual sets forth minimum admission and continued occupancy standards to be followed by local authorities. (*Id.,* at p. 275 [21 L.Ed.2d at p. 480].)

We conclude that section X.A as adopted by respondents violates HUD regulations. The above circular on its face prohibits an automatic exclusion of a particular class of persons defined by their marital status. In contravention of such authority, respondents' policy automatically excludes all unmarried cohabiting adults; a class of persons defined by their marital status.

With regard to appellant's due process attack, in *Vlandis* v. *Kline* (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230], the United States Supreme Court considered the validity of a Connecticut statute which provided that if the legal address of a student was outside the state at the time of his application to the state university system, then he would remain a nonresident as long as he was a student in Connecticut. The court found the statute in violation of due process stating: ". . . it is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebutable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination. Rather, standards of due process require that the State allow such an individual the opportunity to present evidence showing that he is a bona fide resident entitled to the in-state rates." (*Id.,* at p. 452 [37 L.Ed.2d at p. 71].)

Again, in *U.S. Dept. of Agriculture* v. *Murry* (1973) 413 U.S. 508 [37 L.Ed.2d 767, 93 S.Ct. 2832], the court considered the validity of a section of the Food Stamp Act providing that any household would be ineligible which contained a member 18 or older who was claimed as a dependent for federal income tax purposes by a taxpayer who was not a member of an eligible household. The court found the provision invalid in that it created an *irrebutable presumption* of nonindigency often contrary to fact.

In *Andrews* v. *Drew Municipal Separate School District* (1975) 507 F.2d 611, the court found invalid a school district rule which made unwed mothers ineligible to be hired as teacher's aides. The court stated: "The law is clear that due process interdicts the adoption by a state of an irrebutable presumption, as to which the presumed fact does not necessarily follow from the proven fact. [Citations] Thus, unless the presumed fact here, present immorality, necessarily follows from the 'proven fact, unwed parenthood, the conclusiveness inherent in the . . . rule must be held to violate due process. We agree'. . . . that the one does not necessarily follow from the other." (*Id.,* at pp. 614-615.)

The section X.A policy regulation with which we are concerned automatically presumes immorality, irresponsibility and the demoralization of tenant relations from the fact of unmarried cohabitation. Such presumptions are not necessarily universally true in fact. As such the policy creates an unconstitutional *irrebutable presumption* and must be held to be invalid as a denial of due process.

In a consideration of appellant's equal protection attack upon the X.A policy regulation the issue is whether there is a *rational* basis for an *inflexible* policy treating differently "family" groups with a member unrelated by blood or marriage, and family groups with all members related by blood or marriage. Support for the proposition that the classification in issue (cohabiting unrelated adults) cannot be rationally justified under the applicable statutory purposes is found in a number of cases including *U.S. Dept. of Agriculture* v. *Moreno* (1973) 413 U.S. 528 [37 L.Ed.2d 782, 93 S.Ct. 2821], *Tyson* v. *New York City Housing Authority* (1974) 369 F.Supp. 513, *Neddo* v. *Housing Authority of City of Milwaukee* (1971) 335 F.Supp. 1397 and *Thomas* v. *Housing Authority of City of Little Rock* (1967) 282 F.Supp. 575. Each of these cases involved an *inflexible* policy based upon a classification with no *rational* connection between the undesirable conduct associated with a group, and the actions of an individual. The policy regulation under consideration here

clearly contains an *inflexible* policy which places plaintiff in a definable class of unmarried adults living together. Such a classification improperly assumes a connection with undesirable conduct associated with the class (e.g., demoralizing tenancy relations) and the conduct of the individual. The classification thus lacks the required rational basis, possesses the fatal flaw of "inflexibility," and must be held to be in violation of equal protection.

■ The leading case on the right of privacy is *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678] in which the court considered the validity of a Connecticut statute banning the use or providing of contraceptive devices or material. The court found the statute in violation of a constitutional right of privacy basing its decision on the First, Fourth, Fifth and Ninth Amendments and concluding that the statute was an unwarranted intrusion upon the privacy of the marital relationship.

In *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029], the court extended the right of privacy found in *Griswold* from the marital relationship to an unmarried relationship: "It is true that in *Griswold* the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." (*Id.,* at p. 453 [31 L.Ed.2d at p. 362]; see also *Stanley* v. *Illinois* (1972) 405 U.S. 645, 652-653 [31 L.Ed.2d 551, 559-560, 92 S.Ct. 1208].)

It is true that all of the above cases are factually distinguishable from the case at hand in that they involved the procreation or upbringing of children. In this case, none of the children living in the dwelling unit are the children of the adult male. However that does not appear to be a crucial distinction. The ban against unmarried cohabiting adults is total. It would apply not only to appellant, but also to an unmarried couple with children of their own. As such, it would effectively prevent one of the parents from living with and raising in a close and intimate relationship his or her own children. Such a ban contravenes the principles laid down in the above cases and is an invalid infringement of the right of privacy.

Appellant's reliance upon the Unruh Civil Rights Act (Civ. Code, § 51) is misplaced. While the respondents' activities in the conduct of public housing may be considered to be a business activity within the contemplation of the act, it is questionable whether the act is applicable to the present situation. A construction of the Unruh Act may suggest that the discrimination presented here is included under its provisions, but such was not the stated purpose of the act nor does it so provide in its terms. ■ In a consideration of whether the appellant's civil rights as protected by state law were violated, we find the legislation in California Health and Safety Code section 35720 as amended far more pertinent. The section reads in part as follows:

"It shall be unlawful:

"1. For the owner of any publicly assisted housing accommodation which is in, or to be used for, a multiple dwelling, with knowledge of such assistance, to refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodation because of the race, color, religion, sex, *marital status,* national origin, or ancestry of such person or persons. . . .

". . . . . . . . . . . . . . . . . . . . . .

"8. For any owner of housing accommodations to harass, *evict,* or otherwise discriminate against any person in the sale or rental of housing accommodations when his dominant purpose is retaliation against a person who has opposed practices unlawful under this section, . . ." (Italics added.)

The act proscribes other activities as related to the same criteria as set out in paragraph 1. The act was amended effective January 1, 1976 (Stats. 1975, ch. 1189, § 3, p. 2943) and the only change in the legislation was the addition of the classifications "sex, marital status." While we are aware that the amendment occurred after the issue was presented to the trial court, the legislation as it reads at this time must be given effect as a general policy statement related to public housing as expressed by the State of California and is applicable to the case under consideration. On its face the act prohibits evictions from or denials of publicly assisted housing on the basis of marital status, and thus makes unlawful respondents' policy in this case. In fact, it may well be concluded that the amendment to the statute renders moot the broad constitutional ques-

tions which support the findings of constitutional invalidity of the policy regulation X.A as adopted by the respondents.

The judgment is reversed and remanded to the trial court with a direction to enter a decree in declaratory relief finding respondents' X.A policy regulation unconstitutional and unenforceable on the *sole ground* of "living with anyone of the opposite sex to whom the tenant is not related by blood, marriage or adoption" and enjoining respondents from initiating eviction proceedings on that same basis in this or any other action similarly premised.

Gargano, Acting P. J., and Goldstein, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.