[Civ. No. 46892. First Dist., Div. Three. Nov. 27, 1979.]

BINET-MONTESSORI, INC., Petitioner, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Respondents.

**COUNSEL**

Keil, Connolly & Barbieri, Jack F. Bonanno and John A. Larimore for Petitioner.

H. LeRoy Cannon for Respondents.

**OPINION**

**WHITE, P. J.**—Petitioner, a private school presently serving children from two to eight years old, seeks writ of mandate to compel the San Francisco Unified School District to permit it to compete equally for leases for vacant school district property. Specifically, petitioner challenges that portion of resolution No. 91-23A3, adopted by the board of education of the district on February 14, 1979, which restrains the district from leasing to "private educational agencies engaged in the conduct of required educational programs for pupils who are subject to compulsory school attendance laws." Petitioner's attack alleges violation of equal protection and due process and raises questions concerning compliance with certain Education Code provisions. ■ We have concluded that the board's restriction is unconstitutional and that writ of mandate should issue preventing the board and district from enforcing the present restriction on leasing. We have declined to decide the matter on narrower statutory grounds because we see no conflict between the statutes and the board's method of proceeding.

Petitioner is a private school with enrollment of about 100 students and 200 others on the waiting list. Within a few blocks of its Sacramento Street facility the San Francisco Unified School District owns and maintains a structure known as Madison Elementary School which has

been vacant since July of 1978. Under the board's authority to lease surplus school property (Ed. Code, § 39360) respondents propose to lease Madison Elementary School and several other schools to the highest bidder. Petitioner has been informed, however, that by virtue of the above-quoted proviso in resolution No. 91-23A3 any attempted bid by petitioner will be rejected.

Petitioner has previously sought to restrain the board and district from enforcing the proviso, but requests for temporary restraining order and preliminary injunction have been denied by the San Francisco Superior Court. In order to prevent the imminent auction of leases for school district properties, petitioner filed this petition. We issued a stay to prevent respondents from enforcing the proviso during the pendency of this writ proceeding.[1]

■ Petitioner first argues that having elected to solicit bids for leases for the vacant property, respondents are bound to accept all bids and treat all bidders equally. Petitioner focuses on Education Code section 39371, which provides in part that "all sealed proposals...shall, in public session, be opened, examined, and declared by the board" and that "[o]f the proposals submitted which conform to all terms and conditions specified in the resolution of intention to sell or to lease and which are made by responsible bidders, the proposal which is the highest,...shall be finally accepted, unless a higher oral bid is accepted or the board rejects all bids."

Petitioner interprets section 39371 as creating a duty in respondents to "accept any and all bids presented to them." However, it is evident that if any such duty exists, it is not to be found in the statute. Section 39371 requires the board to accept the highest bid among those which "conform to all terms and conditions specified in the resolution." The resolution here conditions the class of bidders so as to exclude petitioner. Thus, rejection of a bid by petitioner is in full compliance with the statute. We have found no statute which limits the board in the "terms and conditions" it may place in a resolution authorizing the leasing of district property. Limitations, if they exist, must be sought in constitutional doctrines.

---

[1]We find the issues presented by this petition to be of sufficient public importance to justify resolution in original writ proceedings. (See *San Francisco Unified School Dist. v. Johnson* (1971) 3 Cal.3d 937, 944-945 [92 Cal.Rptr. 309, 479 P.2d 669]; *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128-130 [142 Cal.Rptr. 325].)

■ Petitioner's constitutional arguments take several shapes. Most compelling is the argument that when a public entity chooses to make a benefit available it may not condition acceptance of the benefit upon waiver of a fundamental right unless it shows a proper justification for such a restriction on the exercise of the right. This principle has been discussed and applied in a variety of contexts. (See, e.g., *Parrish v. Civil Service Commission* (1967) 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223]; *Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409]; *Danskin. v. San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536 [171 P.2d 885]; *Atkisson v. Kern County Housing Authority* (1976) 59 Cal.App.3d 89 [130 Cal.Rptr. 375]; *King v. California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 199 [101 Cal.Rptr. 660].) ■ In *Parrish, supra,* 66 Cal.2d at page 271, footnote omitted, the court explained the principle in the following terms: "[T]his court recently reviewed the so-called 'doctrine of unconstitutional conditions,' concluding that the power of government to decline to extend to its citizens the enjoyment of a particular set of benefits does not embrace the supposedly 'lesser' power to condition the receipt of those benefits upon any and all terms. [¶] When, as in the present case, the conditions annexed to the enjoyment of a publicly conferred benefit require a waiver of rights secured by the Constitution, however well-informed and voluntary that waiver, the governmental entity seeking to impose those conditions must establish: (1) that the conditions reasonably relate to the purposes sought by the legislation which confers the benefit; (2) that the value accruing to the public from imposition of those conditions manifestly outweighs any resulting impairment of constitutional rights; and (3) that there are available no alternative means less subversive of constitutional right, narrowly drawn so as to correlate more closely with the purposes contemplated by conferring the benefit."

■ In the case before us respondents have proposed to offer to members of the public the benefit of leasing vacant school properties. They have conditioned this benefit upon use of the property for purposes other than maintaining a private school in competition with the public schools governed by respondents. Thus the questions we face are (1) is there a constitutionally protected right to conduct a private school, and (2) if so, have the three requirements set forth in *Parrish* and quoted above been satisfied?

The constitutional right to send children to private schools was confirmed by the early United States Supreme Court decision in *Pierce v.*

*Society of Sisters* (1925) 268 U.S. 510 [69 L.Ed.1070, 45 S.Ct. 571, 39 A.L.R. 468]. In that case a military academy for boys and a Catholic religious order operating private schools brought suit to enjoin the enforcement of an Oregon statute requiring all "normal" school children between the ages of eight and sixteen years to attend public schools in that state at least through the eighth grade. The plaintiffs argued that such a statute deprived them of liberty and of property rights without due process of law in violation of the Fourteenth Amendment to the United States Constitution. The Supreme Court agreed, holding (at p. 535 [69 L.Ed. at p. 1078]): "The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."

A necessary corollary to the parent's right to send a child to private school is the right of the private school to operate. The right to send one's children to private school would be a hollow right if the state could prevent the operation of such schools.

Since petitioner enjoys the right to conduct a private school, the remaining issue is whether the requirements set forth in *Parrish* have been met with respect to respondents' resolution conditioning the public benefit upon petitioner's waiver of its right to use the lease to conduct a private school which competes with the San Francisco public schools. *Parrish* requires that the condition reasonably relate to the purposes of the resolution, that the value to the public from the condition manifestly outweigh the impairment of petitioner's right, and that there be no less intrusive alternative means for accomplishing the public purpose.

Respondents give a two-part explanation of the rationale for the condition. The first argument is that leasing to private schools would lead to a decrease in public school enrollment and result in loss of state revenues to the school district. We reject this rationale as patently insufficient to justify the condition placed by the board. To the extent private schools may attract pupils from the public schools they constitute a *beneficial* competitive force.[2] We can find no value to the public

---

[2]Unless, as we will discuss below, the private schools interfere with public school desegregation efforts.

in handicapping the competition more severely than they are presently handicapped by the unavailability of tax support for their operations. Certainly if any value could be said to exist in so injuring competition, it would not outweigh the proviso's impairment of the private school's right to operate.

Respondents' second argument is of considerably greater substance. It centers around the court-imposed obligation that the San Francisco Unified School District prepare and implement a desegregation program to alleviate de jure segregation existing in the school district. In response to a United States District Court decision, the board has adopted various desegregation plans, the latest of which provides that each regular school in the system shall have no more than 45 percent of any single racial/ethnic group and shall have at least four racial/ethnic groups in its pupil population. Respondents assert that any action they take which fosters private schooling may have an adverse effect upon the desegregation plan presently in effect and may lead to a conclusion that they are not in compliance with the district court's decision.

We sympathize strongly with this position. The disagreement we have is not with respondents' impetus for the proviso in resolution No. 91-23A3, but with the manner in which respondents have sought to achieve their goal of protecting their desegregation plan. We are concerned particularly that the proviso does not meet the third prong of *Parrish,* which requires that "there are available no alternative means less subversive of constitutional right, narrowly drawn so as to correlate more closely with the purposes contemplated by conferring the benefit." (66 Cal.2d at p. 271.)

It is our conclusion that respondents could have achieved their goal of protecting their desegregation plan and achieving integration objectives without flatly prohibiting private schools from leasing vacant public school property. They could have set guidelines for private school bidders which would have insured them that leases to private schools would not have had an adverse impact on desegregation in the public schools. If, as respondents assert, mere nondiscrimination by private schools is an insufficient protection from the perceived threat to desegregation of the public schools, respondents could have written more stringent guidelines for private schools leasing public school property. If, as respondents also argue, there was a legitimate danger that they would

lose federal funds under the Emergency School Aid Act (20 U.S.C.A. § 1605 (d) (1)) because of discrimination practiced by lessee schools, they could have protected against that danger as well by carefully drawn conditions upon leases by competing private schools. There are many variations in the conditions, short of outright prohibition as applied here, which the board could have added to the proviso of resolution No. 91-23A3 to insure that the potential lessees did not jeopardize desegregation of the public schools.[3] Under *Parrish,* it was respondents' obligation to utilize a narrower set of conditions.

Because the present resolution fails to satisfy the requirements of *Parrish,* we issue writ of mandate restraining respondents from enforcing that portion of resolution No. 91-23A3 which prevents petitioner and those similarly situated from bidding on an equal footing with other bidders for leases for school district property. Respondents are not prevented from amending the provisions of the resolution to comply with this opinion or from soliciting bids under the present resolution as long as respondents do not enforce the offending restriction upon competitive private schools.

Let a writ of mandate issue directing respondents to refrain from enforcing that portion of resolution No. 91-23A3 which prevents private schools in competition with respondent school district from leasing vacant school district property.

Scott, J., and Feinberg, J., concurred.

---

[3]Since we are not privy to all the details of the desegregation plan or to the ways in which increased enrollment in private schools such as petitioner suggests might interfere with the plan, we will not hazard a guess concerning what conditions to the lease might be appropriate. However, we have no doubt that respondents will be able to apply their expertise in demographics and their knowledge of the particular neighborhoods and schools involved and will be able to establish guidelines for potential lessees which will insure that no adverse impact will be felt by the school district from leasing of vacant school buildings.