[Crim. No. 22595. May 26, 1983.]

In re ALLEN EUGENE REED on Habeas Corpus.

**COUNSEL**

Jay M. Kohorn for Petitioner.

Jeff Brown, Public Defender (San Francisco), Peter Keane, Chief Attorney, Matthew A. Coles, Robert N. Nakatani, Coles & Nakatani, Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz, Fred Okrand and Susan McGrievy as Amici Curiae on behalf of Petitioner.

John K. Van de Kamp and Robert H. Philibosian, District Attorneys, Richard W. Hecht, Harry B. Sondheim, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Respondent.

Ira Reiner, City Attorney (Los Angeles), Jack Brown, Deputy City Attorney, and John Lovell as Amici Curiae.

**OPINION**

**MOSK, J.**—Petitioner was convicted of soliciting "lewd or dissolute conduct" from an undercover vice officer in a public restroom, in violation of Penal Code section 647, subdivision (a).[1] The court sentenced him to three years formal probation on the condition that he obey all laws and observe the rules established by his probation officer. Pursuant to section 290 petitioner was ordered to register with the Los Angeles Police Department as a sex offender.

---

[1]Hereinafter section 647(a). Unless otherwise indicated, further statutory references are to the Penal Code.

Petitioner does not challenge either the constitutionality of section 647(a) or the validity of his own conviction; nor does he argue that no convicted sex offender should ever be required to register under section 290. ■■ ■■ ■ He instead seeks a writ of habeas corpus,[2] contending that the mandatory registration of all section 647(a) misdemeanants constitutes cruel or unusual punishment, and also violates the equal protection clause, infringes on his rights to privacy and intrastate travel, and denies him due process of law.[3]

■ Some background on sections 647(a) and 290 is essential to an understanding of the legal issues presented. Section 647(a) was originally enacted as a vagrancy statute, and a vagrant was defined in the 1955 amended version as "[e]very lewd or dissolute person, or every person who loiters in or about public toilets in public parks." (Stats. 1955, ch. 169, § 2, p. 638.) In 1961 the provision was revised to eliminate the concept of a status offense, proscribing instead certain conduct. (*Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821, 825 [83 Cal.Rptr. 819, 464 P.2d 483].) Section 647(a) now declares that a person "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" is guilty of disorderly conduct, a misdemeanor. Holding that the phrase "lewd or dissolute" was impermissibly vague, in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 244 [158 Cal.Rptr. 330, 599 P.2d 636], we construed the statute to prohibit only public solicitation or commission of conduct "which involves the touching of the genitals, buttocks, or female breast, for purposes of sexual arousal, gratification, annoyance or offense, by a person who knows or should know of the presence of persons who may be offended by the conduct." (See also Note, *Pryor* v. *Municipal Court: California's Narrowing Definition of Solicitation for Public Lewd Conduct* (1980) 32 Hastings L.J. 461, 474; *In re Anders* (1979) 25 Cal.3d 414, 416 [158 Cal.Rptr. 661, 599 P.2d 1364].)

---

[2] Respondent argues that the doctrines of the law of the case and res judicata bar petitioner from relitigating claims rejected by the courts below. The point borders on the frivolous. It is axiomatic that habeas corpus is an extraordinary and collateral action that lies to review a claim of denial of substantive constitutional rights that may have affected the integrity of the fact finding process (*In re Coughlin* (1976) 16 Cal.3d 52, 55 [127 Cal.Rptr. 337, 545 P.2d 249]; *In re Bell* (1942) 19 Cal.2d 488, 492-495 [122 P.2d 22]), or a claim that attacks not the judgment itself but the legality of the punishment (*In re Foss* (1974) 10 Cal.3d 910, 916-917 [112 Cal.Rptr. 649, 519 P.2d 1073]; *Neal* v. *California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839]). Since under section 1506 there is no appeal from the denial of habeas corpus (*People* v. *Del Campo* (1959) 174 Cal.App.2d 217, 221 [344 P.2d 339]), the sole and proper remedy after denial of a petition for writ of habeas corpus by a superior court is to file a new petition with the Court of Appeal, which has original jurisdiction in habeas corpus matters. (Cal. Const., art. VI, § 10.) Further review may be sought in this court either by a new petition for habeas corpus or, preferably, by a petition for hearing. (*In re Michael E.* (1975) 15 Cal.3d 183, 193, fn. 15 [123 Cal.Rptr. 103, 538 P.2d 231].)

[3] Our disposition of this case on the cruel or unusual punishment ground makes it unnecessary for us to address petitioner's alternate contentions.

■ Section 290 requires that persons convicted of certain sex-related crimes, including section 647(a) offenses, register with the chief of police of the city in which they temporarily or permanently reside. The registrant must furnish a written statement, fingerprints, and a photograph, which are forwarded to the Department of Justice. Each change of address must be reported within 10 days. Failure to register or re-register is a misdemeanor. The section applies automatically to the enumerated offenses, and imposes on each person convicted a lifelong obligation to register. A misdemeanant may be released from this "penalty or disability" pursuant to section 1203.4, but there is no procedure to expunge the initial registration. (*Kelly* v. *Municipal Court* (1958) 160 Cal.App.2d 38, 41 [324 P.2d 990].) The purpose of section 290 is "to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." (*Barrows, supra,* 1 Cal.3d at pp. 825-826; see also *Kelly, supra,* 160 Cal.App.2d at p. 45; *In re Smith* (1972) 7 Cal.3d 362, 367 [102 Cal.Rptr. 335, 497 P.2d 807].)

The registration requirement applies to some but not all of the sex-related offenses enumerated in the Penal Code. In addition to section 647(a), those which trigger section 290 include: section 647, subdivision (d) (loitering in or about public toilets); section 266 (procuring female under age 18 for prostitution); section 272 (contributing to the delinquency of a minor); section 288 (lewd or lascivious conduct with child under age 14); section 288a (oral copulation); section 314, subdivision 1 (indecent exposure); section 285 (incest); section 286 (sodomy); section 220 (assault with intent to commit rape, sodomy, oral copulation, etc.); and section 261, subdivision (2) (forcible rape). The only other crimes for which police registration is required are certain narcotics offenses. (Health & Saf. Code, § 11590 et seq.)

On the other hand, sex-related crimes for which registration is *not* required include: section 311.4 (child pornography); section 261.5 (statutory rape); section 281 (bigamy); section 286.5 (bestiality); section 273g (lewdness in the presence of a child); section 647, subdivision (h) ("Peeping Tom"); sections 266d through 266i (pimping and pandering); and section 647, subdivision (b) (soliciting or engaging in acts of prostitution).

■ Petitioner contends that mandatory sex offender registration for section 647(a) misdemeanants violates the constitutional prohibition against cruel or unusual punishment. (Cal. Const., art. I, § 17.) ■ Our first inquiry is whether such registration is a form of punishment within the meaning of the constitutional provision.[4]

[4]Respondent concedes that the mandatory sex offender registration requirement of section 290 may constitute a "penalty" within the meaning of section 1203.4, but denies it is a form of punishment for constitutional purposes. This distinction is without merit. There are not two

In *Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144 [9 L.Ed.2d 644, 83 S.Ct. 544], the United States Supreme Court enumerated the following factors for consideration on this issue: "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions." (Fns. omitted; *id.* at pp. 168-169 [9 L.Ed.2d at p. 661].) We find that by this standard sex offender registration is punitive.

First, we are convinced that such registration is an "affirmative disability or restraint." In *Kelly* v. *Municipal Court, supra,* 160 Cal.App.2d at page 41, the court described the requirement as one of the "penalties and disabilities" imposed on certain convicted misdemeanants. In *In re Birch* (1973) 10 Cal.3d 314 [110 Cal.Rptr. 212, 515 P.2d 12], we vacated a conviction under section 647(a) and ordered that a guilty plea be set aside on the grounds that the record did not indicate petitioner had been advised of his right to counsel and had not been informed that, as a result of his conviction, he would be required to register as a sex offender under section 290. Justice Tobriner, writing for a unanimous court, concluded that "[a]lthough the stigma of a short jail sentence should eventually fade, the *ignominious badge* carried by the convicted sex offender can remain for a lifetime." (*Id.* at pp. 321-322; italics added.) Similarly, albeit in a different context, Justice Kaus has characterized the sex offender registration requirement as follows: "Apart from the bother and loss of privacy which mere registration entails, the 'ready availability' to the police, if it serves its purpose, presumably means a series of command performances at lineups." (Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* (1974) 21 UCLA L.Rev. 1191, 1222.)[5] Needless to emphasize, law enforcement "command performances" involve compulsion and restraint.

Although the obligation to register may be terminated pursuant to section 1203.4, there is no provision for expunging the initial registration. Thus, for example, a person who lives in Los Angeles but is convicted under section

---

legally different species of punishment. Article I, section 17, of the California Constitution prohibits the infliction of cruel or unusual punishment. "Cruel" and "unusual" are standards for assessing the constitutionality of penal legislation. All statutory penalties, including those from which a misdemeanant may be released under section 1203.4, must meet these constitutional standards.

[5]One is reminded of the closing scene of the classic film "Casablanca," in which, after a German officer is assassinated, the Vichy police inspector laconically gives the order to "round up the usual suspects."

647(a) in San Diego must register under section 290 in Los Angeles. After the probationary period has expired, he may petition in San Diego for release from the registration penalty under section 1203.4. If successful, he will not be required to re-register if he moves; however, he will always remain registered as a sex offender in Los Angeles. His name, photograph, fingerprints, and other relevant information will be permanently available to the Los Angeles police. Thus section 290 effectively imposes a lifelong burden on all those subjected to its terms.[6]

The fact that sex offender registration may not have "historically been regarded as punishment" is not dispositive. The *Mendoza-Martinez* opinion sets out a number of relevant considerations, not a checklist of absolute requirements. Furthermore, in *Trop* v. *Dulles* (1958) 356 U.S. 86 [2 L.Ed.2d 630, 78 S.Ct. 590], the Supreme Court invalidated the penalty of denationalization imposed for wartime desertion. The court denied that the government has "a license . . . to devise any punishment short of death within the limits of its imagination. . . . [¶] . . . Fines, imprisonment, and even execution may be imposed depending upon the enormity of the crime, but any technique outside the bounds of these traditional penalties is constitutionally suspect." (*Id.* at pp. 99-100 [2 L.Ed.2d at p. 642].)

Similarly in *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544], the high court stressed the severity of the nonphysical punishment imposed. Though no doubt influenced in its decision by the harshness of the physical punishment, the court also addressed the postimprisonment penalties: "His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty." (*Id.* at p. 366 [54 L.Ed. at p. 798].)

The third, fourth, and fifth factors enumerated in *Mendoza-Martinez* are readily satisfied here. We have interpreted section 647(a) to require lewd intent

---

[6]Petitioner refers to certain Education Code and other sections to support his right to privacy and cruel or unusual punishment contentions. However, these sections merely impose additional sanctions on those convicted under section 647(a); they do not implicate the registration requirement directly. Education Code section 44010, for example, provides for the revocation of teaching certificates of persons convicted under section 647(a). This is irrelevant to the challenge to section 290.

and specific sexual touching. (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d at p. 244.) Thus registration "comes into play only on a finding of *scienter.*" (372 U.S. at p. 168 [9 L.Ed.2d at p. 661].) Whether or not recidivism is in fact a problem with section 647(a) misdemeanants, the legislative intent was surely to deter recidivism by facilitating the apprehension of past offenders. (*Barrows* v. *Municipal Court, supra,* 1 Cal.3d at pp. 825-826.) And, of course, "the conduct to which [registration] . . . applies is already a crime."

We may also consider, under *Mendoza-Martinez,* whether there exists "an alternative purpose" to which the punishment "may rationally be connected." (372 U.S. at p. 168 [9 L.Ed.2d at p. 661].) Although the Legislature may reasonably have intended that sex offender registration serve as a law enforcement tool to facilitate criminal investigations, it is not clear that the measure is effective in practice.[7] Moreover, the fact that a minimal or "rational" basis may underlie the legislation is outweighed here by the fact that the penalty of registration is "*excessive* in relation to the alternative purpose assigned" to it. (Italics added; *ibid.*)

We conclude that the sex offender registration compelled by section 290 is a form of punishment within the meaning of article I, section 17, of the Constitution.[8] ■ We turn next to the question whether it violates that provision to require such registration of section 647(a) misdemeanants.

■ As courts have recognized, the constitutional language provides a flexible and progressive standard for assessing the severity of punishment: the no-

---

[7]Interestingly, the Los Angeles City Attorney asserts in his amicus curiae brief that in fact the mandatory registration of section 647(a) misdemeanants as sex offenders is "dysfunctional." When the city used its fingerprint identification computer to attempt to identify the "Hillside Strangler," for example, the computer apparently produced the identities of "thousands" of persons convicted of indecent exposure and lewd conduct but failed to identify the "Strangler." The city attorney explains that in addition to overloading computers with useless information (the so-called "garbage in, garbage out" effect), the registration requirement is "counterproductive" in two further respects. According to amicus, "because of the perceived draconian effect of registration" courts have limited the reach of section 647(a) to "make the crime fit the punishment." Second, the threat of the mandatory registration penalty leads defendants to claim their right to a jury trial rather than plead guilty, even when the evidence of guilt is overwhelming.

[8]The dissent by Justice Richardson suggests that mandatory sex offender registration is nonpunitive. If such were the case registration necessarily would be regulatory. Surely in this context a regulation *mandating* sex offender registration for the misdemeanants in question would run afoul of the requirement of procedural due process (see *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729]; *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622]) if not also of the guarantee of substantive due process (see *Vlandis* v. *Kline* (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230]; *Atkisson* v. *Kern County Housing Authority* (1976) 59 Cal.App.3d 89 [130 Cal.Rptr. 375]). It may be that Penal Code section 290 incorporates an aspect of both punishment and regulation for all registrable offenses. We are satisfied, nonetheless, that because registration of misdemeanants convicted under section 647(a), falls well within the rubric of punishment, we need not reach the issue whether, as regulatory, the registration requirement would violate the right to due process.

tion of cruel and unusual punishment "is not fastened to the obsolete, but may acquire meaning as public opinion becomes enlightened by a humane justice." (*Weems, supra,* 217 U.S. at p. 378 [54 L.Ed. at p. 803].) In *People* v. *Anderson* (1972) 6 Cal.3d 628, 647 [100 Cal.Rptr. 152, 493 P.2d 880] we adopted the view under the state Constitution that punishment should be evaluated in light of "the evolving standards of decency that mark the progress of a maturing society," quoting *Trop, supra,* at page 101 of 356 U.S. [2 L.Ed.2d p. 642].

■ Implicit in the characterization of the constitutional prohibition as flexible and progressive is the notion that punishment may not be grossly disproportionate to the offense. We explicitly adopted the proportionality standard under the state Constitution in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], and identified three techniques used by the courts to focus the inquiry: (1) an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; (2) a comparison of the challenged penalty with those imposed in the same jurisdiction for more serious crimes; and (3) a comparison of the challenged penalty with those imposed for the same offense in different jurisdictions. (*Id.* at pp. 425-429.) We now apply each in turn to the imposition of the registration penalty for section 647(a) offenses.

■ By contemporary standards, the offenses for which persons may be convicted under section 647(a) are relatively minor. A gesture, a flirtation, an invitation for sexual favors, if accompanied by any touching and done in a public place, may suffice. Since 1975 (Stats. 1975, chs. 71 and 877, pp. 131 and 1957) homosexual acts are no longer criminal in themselves. Although in *Pryor* we narrowed the definition of "lewd or dissolute" to require that the perpetrator know or have reason to know that someone might be offended by the conduct, this by no means renders the sexual overture violent or dangerous. It is also sufficient for conviction that, as in petitioner's case, a single undercover vice officer be present in a public restroom; no one need be "victimized" in the traditional criminal sense.[9]

---

[9]At least one comprehensive study of homosexuality and the law provides support for the conclusion that section 647(a) offenses are generally minor crimes. The authors of *The Consenting Adult Homosexual and the Law: An Empirical Study of Enforcement and Administration in Los Angeles County* (1966) 13 UCLA L.Rev. 647, offer the following data and observations:

"The [police] decoy's *modus operandi* at a public restroom may be to loiter inside engaging a suspect in friendly conversation, using handwashing or urinal facilities, or even occupying a commode for long periods of time. If the suspect makes a lewd solicitation or touching, the decoy will usually suggest going elsewhere to consummate the act and the arrest will be made outside of the restroom." (*Id.* at pp. 691-692.)

"Since the decoy operates to apprehend solicitors, it is difficult to argue that he is a victim or that he is outraged by the proscribed conduct, particularly when he engages in responsive conversation or gestures with the suspect. In fact, complaints to the police regarding lewd solicitations are infrequent." (*Id.* at p. 698.)

"Complaints to the police are infrequent. Although 82 of 493 felony arrests and 330 of 434

The facts of the present case support the classification of the typical section 647(a) offense as minor. Certain events leading to petitioner's arrest are in dispute: petitioner denies that he solicited the undercover officer. The parties do agree, however, that petitioner and the vice officer engaged in brief conversation in the public restroom, at the urinals, and that petitioner masturbated briefly in the officer's presence. The police officer was the only prosecution witness at the trial; no other persons appeared as complainants or as witnesses to the conduct. The probation report states that petitioner is an adult homosexual who has been living for the past 10 years with another man. He was once married and has three children. He served 21 years in the United States Air Force and retired honorably as a senior master sergeant. He has been steadily employed, presently with a calculator company, and has no prior arrest history.

Petitioner is not the prototype of one who poses a grave threat to society; nor does his relatively simple sexual indiscretion place him in the ranks of those who commit more heinous registrable sex offenses. His conviction under section 647(a) is clearly distinguishable, for example, from the situation in *People v. Mills* (1978) 81 Cal.App.3d 171 [146 Cal.Rptr. 411], relied upon by the Attorney General. There the application of section 290 to a mentally disordered sex offender convicted *under section 288* of child molesting and attempted rape of a seven-year-old girl was held not to constitute cruel or unusual punishment. Petitioner does not ask us to assume, as did the defendant in *Mills,* that sex offenders per se are not recidivists and hence need not be required to register. (*Id.* at p. 177.) His claim is much narrower—that *section 647(a)* misdemeanants cannot be presumed to be dangerous sex offender recidivists warranting permanent police surveillance.

In the second inquiry suggested in *Lynch* we compare the punishment for conviction under section 647(a)—the statutory misdemeanor penalty of imprisonment in the county jail for up to six months and/or a fine of $500, plus the requirement of registration under section 290—with the penalties prescribed in this state for other, more serious offenses. "The underlying but unstated assumption appears to be that although isolated excessive penalties may occasionally be enacted, e.g., through 'honest zeal' [citation] generated in response to transitory public emotion, the Legislature may be depended upon to act with due and deliberate regard for constitutional restraints in prescribing the vast majority of punishments set forth in our statutes." (8 Cal.3d at p. 426.) If a more serious offense is punished less severely, the challenged penalty is necessarily suspect.

disorderly conduct arrests were indicated to result from complaints made to police, perusal of arrest reports for these offenses indicates that such statements made on arrest reports are a matter of form. The 'complaint,' specifying merely that homosexual activity is prevalent in the areas, may have been communicated to the police many months previous to the arrest. It is rare for an arrest to result immediately from a specific complaint regarding an observation of lewd conduct or a lewd solicitation." (*Id.* at p. 688, fn. 17.)

We note several arguably more serious sex-related misdemeanors for which section 290 registration is *not* mandated: admitting or keeping a minor in a house of prostitution (§ 309); employing a minor to perform prohibited sexual acts (i.e., child pornography) (§ 311.4); pimping and pandering (§§ 266d-266i); rape of a person incapable of giving consent (§ 261, subd. (1)); prostitution (§ 647, subd. (b)); and lewd conduct in the presence of a child (§ 273g). It is difficult to justify requiring a section 647(a) misdemeanant who masturbates in the presence of a police officer to register as a sex offender, while not imposing this additional penalty on those convicted under section 273g of lewd conduct in the presence of a child.

Similarly, a person convicted under section 647, subdivision (b), of soliciting or engaging in acts of prostitution is exempt from the registration sanction even though public lewd conduct is also involved. Moreover, one purpose of the registration penalty is to promote the surveillance of potential recidivists; yet prostitutes and their accomplices, who make a business of public solicitation, are far more apt to repeat their offense.[10]

More serious crimes not related to sex, such as robbery, burglary, or arson, do not require registration, though violence and victimization are more pronounced and recidivism is often proved. A felon convicted of such crimes may serve his time and be done with it; while a misdemeanant convicted of a non-violent section 647(a) offense in a semi-private restroom, involving no victim as such, must carry the onus of sex offender registration for a lifetime. This discrepancy demonstrates the relative severity of the punishment imposed for section 647(a) violations.

The final proportionality inquiry noted in *Lynch* asks that we compare the challenged penalty with the penalties imposed in different jurisdictions for the same offense. In 1969 the Center for the Study of Crime, Delinquency, and Corrections at Southern Illinois University surveyed criminal registration laws in United States cities with populations of over 50,000. (Docker & Kammler, Criminal Registration Statutes in the United States (1969).) Only four states require registration for serious sex offenses, not including disorderly conduct. Only 13 cities of the 384 surveyed had sex registration ordinances. By 1976 only California, Arizona, Ohio, and Nevada had sex offender registration laws. Only Arizona had a sex offender law similar to California's, and it was repealed in 1978. Currently only California, Ohio, Nevada, Alabama, and Massachusetts require any kind of sex offender registration. In Nevada

---

[10]The argument that prostitution could be regulated under both or either section 647(a) or 647, subdivision (b), is unpersuasive. While conceivably public solicitation of lewd conduct by a prostitute for consideration could lead to an arrest under section 647(a) and trigger the sex offender registration requirement, in practice it is far more likely that the prostitute will be arrested under section 647, subdivision (b)—the statutory prohibition directed specifically against prostitution itself.

registration is limited to felony sex offenses. Ohio's statute is similar, with the additional requirement that the individual be convicted of two or more sex crimes. Massachusetts' statute imposes the duty to notify authorities of the institution from which one is released. California's mandatory sex offender registration provision is therefore relatively severe under the third *Lynch* test.

In *Lynch* we interpreted the constitutional prohibition against cruel or unusual punishment to dictate that the punishment must fit both the crime and the criminal. Section 290 imposes the lifelong stigma of sex offender registration on persons who often have committed little more than a sexual indiscretion, involving no violence. Other equally or more serious offenses are punished less severely, and California is virtually alone in its imposition of the registration requirement for misdemeanor conduct. In these circumstances, the continuing penalty of sex offender registration is out of all proportion to the crime of which petitioner was convicted. We conclude that insofar as section 290 requires such registration of persons convicted under section 647(a), it is void under article I, section 17, of the California Constitution.

The Municipal Court for the Newhall Judicial District is ordered to modify the conditions of probation in People v. Allen Eugene Reed, No. M9186, by eliminating the requirement that petitioner register as a sex offender pursuant to section 290. The order to show cause, having served its purpose, is discharged and the writ of habeas corpus is denied.

Bird, C. J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**KAUS, J.,** Dissenting.—As a matter of policy I agree with many of the broadsides which the majority aims at section 290 of the Penal Code. Nevertheless, I cannot agree that it is unconstitutional as applied to persons convicted of having violated section 647, subdivision (a). There is, of course, much in the majority opinion which should make the Legislature stop, look and listen. Perhaps it will have that effect—either by causing the ambit of the section to be broadened or, conversely, by triggering its outright repeal. The question before us, however, is whether the section, as applied to section 647, subdivision (a) violators, is "cruel or unusual" within the meaning of article I, section 17 of our own fundamental law or "cruel and unusual" under the Eighth Amendment to the United States Constitution. Our power to hold laws invalid if they violate these constitutional precepts is simply not a general mandate to get rid of all punishments which, in our view, do not fit the crime. The constitutional standards are more severe. While I agree that reasonable men can differ over the wisdom or efficacy of section 290, I cannot get myself to say that, as a matter of law, it is repugnant to "the evolving standards of decency that mark the progress of a maturing society." (*Trop* v. *Dulles* (1958) 356 U.S. 86, 101 [2

L.Ed.2d 630, 642, 78 S.Ct. 590]; see *People* v. *Anderson* (1972) 6 Cal.3d 628, 647 [100 Cal.Rptr. 152, 493 P.2d 880].)

I therefore dissent.

**RICHARDSON, J.**—I respectfully dissent.

My colleagues hold that the registration provisions of Penal Code section 290 (further statutory references are to that code unless otherwise cited), impose a *cruel or unusual punishment* upon certain sex offenders who are subject to registration (namely, those who are convicted of lewd or dissolute conduct under § 647, subd. (a)). To the contrary, registration of sex offenders is not "cruel or unusual" nor is it "punishment" as those terms are used in our state Constitution (art. I, § 17).

The majority's analysis depends upon premises which are unsupported by the record before us. Thus, the majority assumes that the registration requirement of section 290 involves substantial "compulsion and restraint" (*ante,* p. 920), is directed toward "relatively minor" offenders (*id.,* p. 923), and may not be "effective in practice" as a law enforcement tool (*id.,* p. 922). None of these propositions is established by evidence in this record. Rather than presume facts supporting the invalidity of section 290, we have repeatedly adopted a precisely opposite analytical approach in appraising the constitutionality of statutes: Legislation is presumed to be constitutional and must be upheld unless its invalidity " 'clearly, positively and unmistakably' " appears. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 317 [168 Cal.Rptr. 603, 618 P.2d 149]; *In re Anderson* (1968) 69 Cal.2d 613, 628 [73 Cal.Rptr. 21, 447 P.2d 117]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 549 [63 Cal.Rptr. 21, 432 P.2d 717].) No such showing was made here.

### 1. *"Compulsion and Restraint"*

Compliance with the registration requirement of section 290 involves only the barest minimum intrusion or restriction upon personal freedom or privacy. Under section 290, the registrant simply must provide a written statement containing identifying information, together with his fingerprints and photograph (subd. (d)). Upon changing his residence, the registrant must notify the appropriate agency of his new address. This may be done by mail (subd. (e)). All information furnished by the registrant is deemed confidential and may be disclosed *only* to law enforcement officers (subd. (h)).

The majority conjures a series of hypothetical circumstances, suggesting that registration entails "command performances" at lineups, along with other, unspecified "compulsion and restraint." This frightening, but fictional,

scenario is wholly unsupported by the record. Nothing contained in section 290 requires that registrants cooperate with police, or attend compulsory lineups, or otherwise waive their constitutional rights. Any "compulsion and restraint" experienced by a registrant is attributable to *other* factors unrelated to the registration process, such as a prior probation condition requiring his cooperation, or the existence of probable cause to detain or arrest him. The registration laws require neither arrest nor detention. They do aid in assuring that, once cause to detain or arrest is shown, the suspect may be located without undue effort. In short, the record simply does not support the majority's suggestion that the registration requirement by itself leads to undue police harassment and, as previously noted, we cannot presume such a consequence.

Moreover, as the majority concedes, the obligation to register and re-register may be terminated upon completion of probation or in the interests of justice. (§ 1203.4.) Yet, my colleagues bemoan the fact that there appears to be no statutory method for expunging one's registration, thereby relieving him of the "lifelong burden" of remaining a statistic in the police files. (*Ante,* p. 921.) Any such theoretical "burden" does not amount to "cruel or unusual punishment" in a constitutional sense.

The majority also suggests that section 290 "penalizes" registrants by allowing "employers" to require disclosure of the arrest records of prospective employees. (*Ibid.*) Not so. The majority misrepresents the scope of the statute. As I have previously noted, section 290 *requires* that registration information be kept *confidential*—there are *no exceptions for employers.* Another provision, Labor Code section 432.7, subdivision (e)(1), permits employers *at health care facilities* to require applicants for positions "with regular access to patients" to disclose their prior arrests for registrable offenses. But, contrary to the majority, the section does not apply to all "employers," and in any event does not require disclosure of *any* information registered under section 290.

## 2. *"Relatively Minor" Offenses*

The majority attempts to minimize the sweeping effects of its decision, describing the sex offenses proscribed by section 647, subdivision (a), as "relatively minor" in nature, involving a mere "gesture" or "flirtation," accompanied by a "touching" done in a public place. (*Ante,* p. 923.) The majority concedes (*id.,* at p. 924) that section 290 is valid as applied to offenses which are "more heinous," such as child molesting. (See *People* v. *Mills* (1978) 81 Cal.App.3d 171, 176-182 [146 Cal.Rptr. 411].)

However, the majority's characterization of lewd or dissolute conduct under section 647, subdivision (a), as a "relatively minor" offense reveals, in my view, a disturbing and dangerous naivete. That section requires proof of an *of-*

*fensive* touching of the genitals, buttocks or female breast for purposes of sexual arousal, gratification, annoyance or offense. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 244 [158 Cal.Rptr. 330, 599 P.2d 636].) Such an offense frequently is the introductory or preparatory conduct to even more serious assaultive sex offenses. Doubtless, many offenders convicted under section 647, subdivision (a), may have been prematurely thwarted from committing aggravated sex offenses. They may have pleaded guilty to the lesser offense as part of a plea bargain. Although in a particular case the actor's conduct may have stopped short of the completion of a more aggravated offense, surely the Legislature was entitled to conclude that, for policy reasons, registration should extend to all persons convicted of the lewd or dissolute conduct proscribed by section 647, subdivision (a).

Cataloguing various other offenses, such as prostitution, pimping, child pornography, and the like, the majority purports to draw strength from the fact that such offenders need not register. However, as the *Mills* court, *supra,* explains, "This is a matter in the first instance for the state Legislature to determine the different degrees of gravity, of danger, to society from various types of sex offenses." (81 Cal.App.3d at p. 180.) Moreover, it is well established that the Legislature need not regulate the whole of a field at once. (*Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252].) Section 290 serves the legitimate state purpose of facilitating police surveillance of certain convicted sex offenders who are deemed likely to be recidivists. (See *Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821, 825-826 [83 Cal.Rptr. 819, 464 P.2d 483].)

### 3. *Registration Not "Effective in Practice"*

Finally, the majority observes that "it is not clear that the [registration] measure is effective in practice" (*id.,* at p. 922, fn. omitted); therefore, the "minimal" utility of the registration device is outweighed by the "excessive" penalty of registration. (*Id.,* at p. 922.) This argument is based upon sheerest speculation. Whether or not registration is working, or is "effective," is a conclusion to be reached by the Legislature, not us.

Even if the judgment was ours to make, obviously we cannot measure the effectiveness of a device such as registration of sex offenders in the absence of some evidence in the record directed toward that issue. In the present case, the appellate briefs of the Los Angeles District Attorney and amicus Los Angeles City Attorney reach differing conclusions on the point. Under such circumstances, we must presume that the legislative purposes were and are legitimate and useful. It is not an appropriate judicial function for us, in wandering along paths of our own conjecture, to substitute our views for that of the Legislature. It is perfectly reasonable for the Legislature to conclude that re-

quiring those persons convicted under section 647, subdivision (a), to register with the local police would accomplish either of two valid purposes: deterrence of those already once convicted from repeating the offense and assistance in the apprehension of those recidivist offenders who had not been so deterred. (See *Barrows* v. *Municipal Court, supra,* 1 Cal.3d at pp. 825-826.)

### 4. *Conclusion*

The essence of cruel or unusual punishment, we have said, is that it "is so disproportionate to the crime for which it is inflicted that it *shocks the conscience and offends fundamental notions of human dignity."* (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted, italics added; see *People* v. *Mills, supra,* 81 Cal.App.3d 171, 177-179.) Considering the relatively minor burdens imposed by section 290, the potential and continuing danger to the public, especially the young, posed by persons who have been convicted under section 647, subdivision (a), and the presumed utility of the registration device, the unconstitutionality of section 290 does not "clearly, positively, and unmistakably" appear.

I would deny petitioner relief.

Respondent's petition for a rehearing was denied July 20, 1983. Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.