107 Cal.Rptr.2d 562 (2001)
89 Cal.App.4th 758
In re Leon Casey ALVA, on Habeas Corpus.
No. B142625.
Court of Appeal, Second District, Division Three.
May 31, 2001.
Review Granted September 19, 2001.
*563 Steven T. Flowers, Los Angeles, for Petitioner.
James K. Hahn, City Attorney, Debbie Lew, Assistant City Attorney Supervisor, and Candice I. Horikawa, Deputy City Attorney, for Respondent.
FIDLER, J.[*]

PROCEDURAL HISTORY
This matter comes before us by order of our Supreme Court, directing us to issue an order to show cause limited to the issue of whether the registration required by Penal Code section 290[1] constitutes cruel and unusual punishment under either the Eighth Amendment of the United States Constitution or article I, section 17 of the California Constitution. Section 290 requires convicted sex offenders to register every California residence they have with the local police chief or sheriff. Registration is required annually, even if there is no change in residence, and registration is required for life. If, however, a person required to register for a violation of section 311.11, subdivision (a), receives a certificate of rehabilitation, the registration requirement can be eliminated. (See §§ 290.5, 1203.4 & 4852.01 through 4852.17.)
Petitioner was convicted of a misdemeanor violation of section 311.11, subdivision (a), possession of child pornography. Section 311.11, subdivision (a), in pertinent part, makes it unlawful for an individual to knowingly possess various materials knowing that it "depicts a person under the age of 18 years personally engaging in or simulating sexual conduct...." A first-time offender under this section is punishable by up to one year imprisonment in the county jail and/or a fine of $2,500. Subsequent violations of this section are felonies, punishable by up to six years in state prison. Petitioner was placed on probation for a period of 36 months on various terms and conditions, including a fine of $1,250, the requirement that he complete a therapy program aimed at sexual deviancy and especially at pedophilia, and 60 days in the county jail to be stayed permanently if he completed the therapy. Petitioner was also required to register as a sex offender pursuant to section 290.
Petitioner objected to the registration requirement, contending it constituted cruel and unusual punishment. The trial court refused to delete the registration requirement of section 290, stating: "[a]nd this court finds based upon the testimony presented and the defendant's professed interest in having sexual contact with children as young as 10, the registration is appropriate even though he did not engage in such conduct in this case." (See People v. Monroe (1985) 168 Cal.App.3d 1205, 215 Cal.Rptr. 51.) The appellate department of the Los Angeles Superior Court affirmed petitioner's conviction. This court denied the original writ of habeas corpus without an opinion. As previously indicated, our Supreme Court directed us to issue the order to show cause.

FACTS OF THE CASE
As we will discuss, infra, the facts of this case are central to our disposition. We set them forth as they are relevant to *564 our discussion. Based upon a "We-tip" lead that identified petitioner as an individual who was producing and/or distributing child pornography, the Los Angeles Police Department instituted an undercover investigation. Detective William H. Dworin, the officer in charge of the sexually exploited child unit, led the investigation. Utilizing e-mail and recorded telephone conversations, Dworin posed as an individual who had a sexual interest in children. Dworin used the name "James." Petitioner indicated to "James" that he also had a sexual interest in boys. Detective Dworin created a fictitious 10-year old boy named "John." Dworin told petitioner he was involved in a sexual relationship with "John." Petitioner indicated to "James" that he had been looking for a man who had "the same interests as me" since he was thirteen years old. In one e-mail petitioner stated the following: "Do you think you would be interested in anyone else playing with John a bit? If necessary I could pay you cash or some other way.... Other than that I would be interested in talking and trading and also I have a boy coming out from Denver who is 8 and maybe we could trade? ..." Eventually, Dworin obtained a search warrant for petitioner's home and recovered videotapes which, among other things, depicted young boys, clearly under the age of 18 years, engaged in anal and oral sex. A small color poster of multiple small pictures, including a picture captioned "Boys Will Be Toys," depicted similar activity. The poster also included a note which read: "K.C. You need this for your collection. Don't tell anyone where you got it." When the search warrant was served, the petitioner gave these items to the police. Petitioner also posted a new e-mail that identified "James" as a police officer and stated: "Just tell him you do not like boys you only like men or women not under 18 he is a cop."

DISCUSSION
In order to determine whether the registration requirements of section 290 are cruel and unusual punishment, either on their face or as applied to the petitioner, we must first determine whether the requirement to register as a sex offender is punishment at all.

I. Eighth Amendment:

Castellanos, infra.

We begin our inquiry under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment. The United States Supreme Court has clearly established that what constitutes punishment is determined within the context of various constitutional provisions, i.e., the double jeopardy clause of the Fifth Amendment vis-à-vis the excessive fines clause of the Eighth Amendment. (People v. Castellanos (1999) 21 Cal.4th 785, 800-801, 88 Cal.Rptr.2d 346, 982 P.2d 211 (cone. opn. of Kennard, J.), citing United States v. Ursery (1996) 518 U.S. 267, 286-287, 292 [116 S.Ct. 2135, 135 L.Ed.2d 549] and Austin v. United States (1993) 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488].) The appropriate test for the determination of punishment varies, depending on whether the analysis is under the ex post facto clause or the Eighth Amendment. As Justice Kennard points out in Castellanos, supra, 21 Cal.4th at page 801, 88 Cal.Rptr.2d 346, 982 P.2d 211, "[t]he definition of punishment under the Eighth Amendment is a broad one, and encompasses some sanctions whose purpose is both remedial as well as punitive and some that are imposed in civil proceedings. [Citation.]"
People v. Castellanos, supra, 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211, a case without a majority opinion, analyzed *565 section 290's registration requirements as punishment, but only within the context of an ex post facto analysis. The lead opinion, written by Chief Justice George and concurred in by Justices Baxter and Chin, concluded that for the purpose of ex post facto analysis only, registration was not punishment. The lead opinion disapproved of In re Reed (1983) 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216, which held that section 290's registration requirements were punishment under article I, section 17 of the California Constitution as applied to a misdemeanor conviction of section 647, subdivision (a), soliciting lewd or dissolute conduct. As noted, supra, this disapproval concerned only an ex post facto analysis.[2]
Justice Kennard, in a concurring and dissenting opinion joined by Justices Werdegar and Brown, agreed that Reed's conclusion that registration was punishment under the state constitution was incorrect, but only insofar as Reed had applied the test in Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144 [83 S.Ct. 554, 9 L.Ed.2d 644] in the context of an ex post facto analysis (we will set forth Mendoza-Martinez later in our discussion). The lead opinion did not incorporate the Mendoza-Martinez test in reaching its conclusions. Justice Kennard's opinion stated: "For the reasons stated above, I disagree with Reed's conclusion that under the Mendoza-Martinez factors sex offender registration is punishment. This does not, however, mean that Reed was incorrect in holding that registration is punishment for purposes of article I, section 17 of the California Constitution. Given the holding in Austin v. United States, supra, 509 U.S. 602, 113 S.Ct. 2801, that for Eighth Amendment purposes the concept of punishment is broader than the Mendoza-Martinez definition, it is possible for a sanction to be punishment under the Eighth Amendment or its state constitutional equivalent in article I, section 17 and yet not be punishment under the Mendoza-Martinez factors. Thus, my analysis does not call Reed's holding into question." (People v. Castellanos, supra, 21 Cal.4th at p. 805, 88 Cal.Rptr.2d 346, 982 P.2d 211.) Justice Mosk dissented, feeling that the Reed decision was still good law.[3]
In the lead opinion, Chief Justice George pointed out: "In Wright v. Superior Court [(1997)] 15 Cal.4th 521, 63 Cal.Rptr.2d 322, 936 P.2d 101, we recently examined the nature of the sex offender registration requirement imposed by section 290, albeit in another context. We held in Wright that failure to register as required by section 290 is a continuing offense. In so holding, we observed that the sex offender registration requirement `is intended to promote the "`state interest in controlling crime and preventing recidivism in sex offenders.'" [Citation.] As this court consistently has reiterated: "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]" [Citations.] ... [¶] ... The statute is thus regulatory in nature, intended to accomplish *566 the government's objective by mandating certain affirmative acts.' ... [¶] The sex offender registration requirement serves an important and proper remedial purpose, and it does not appear that the Legislature intended the registration requirement to constitute punishment. Nor is the sex offender registration requirement so punitive in fact that it must be regarded as punishment, despite the Legislature's contrary intent. Although registration imposes a substantial burden on the convicted offender, this burden is no more onerous than necessary to achieve the purpose of the statute." (People v. Castellanos, supra, 21 Cal.4th at p. 796, 88 Cal.Rptr.2d 346, 982 P.2d 211.)
As noted, supra, the lead opinion and Justice Kennard's concurring and dissenting opinion differed on whether to apply the Mendoza-Martinez factors in deciding what constitutes punishment, at least within the framework of an ex post facto analysis. Regarding this multifactor test of punishment in Kennedy v. Mendoza-Martinez, supra, Justice Kennard felt that:
"If the legislature intended the sanction to be civil, then the second question is whether the sanction in purpose or effect is nonetheless so punitive that it can only be regarded as punishment. It is at this stage that the Mendoza-Martinez factors come into play. In the words of the high court: [¶] `Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," [citation] as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," [citation]. [¶] `In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez [supra,'] 372 U.S. [at pp.] 168-169 [83 S.Ct. 554, 567-568, 9 L.Ed.2d 644] (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishmentretribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," [citation] and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.' (Hudson v. United States [(1997)] 522 U.S. 93, 99-100 [118 S.Ct. 488, 493, 139 L.Ed.2d 450]; accord, Kansas v. Hendricks [(1997)] 521 U.S. 346, 361-362 [117 S.Ct. 2072, 2081-2082, 138 L.Ed.2d 501]; United States v. Ursery, supra, 518 U.S. 267, 288 [116 S.Ct. 2135, 2147] [`Second, we turn to consider whether the proceedings are so punitive in fact as to "persuade us that the forfeiture proceeding] may not legitimately be viewed as civil in nature," despite Congress' intent.'], at 291, 116 S.Ct. 2135; United States v. One Assortment of 89 Firearms [(1984)] 465 U.S. 354, 362 [104 S.Ct. 1099, 1104-1105, 79 L.Ed.2d 361]; United States v. Ward [(1980)] 448 U.S. 242, 248 [100 S.Ct. 2636, 2641, 65 L.Ed.2d 742].)" (People v. Castellanos, supra, 21 Cal.4th at pp. 801-802, 88 Cal.Rptr.2d 346, 982 P.2d 211.)
Even if the Mendoza-Martinez factors are applied to determine whether the statutory scheme contained in section 290 is so punitive either in purpose or effect that it turns what the Legislature clearly intended not to be a criminal sanction into a form of punishment, the result would be the *567 same. Although there may be punitive aspects connected to registration, they do not change section 290 into punishment, under an analysis of the Eighth Amendment. As Justice Kennard points out in People v. Castellanos, supra, 21 Cal.4th at pages 804-805, 88 Cal.Rptr.2d 346, 982 P.2d 211:
"Whatever punitive aspects the statute may have, they do not seem so overwhelming as to turn registration into a form of punishment. This is especially true in light of the high court's conclusion in Kansas v. Hendricks, supra, 521 U.S. 346, 362 [117 S.Ct. 2072, 2082], that the civil commitment of sex offenders is not punishment. It is hard to imagine how requiring a sex offender to file an address report could be punishment when physically confining the same offender beyond the end of his criminal sentence is not.
"Application of the Mendoza-Martinez factors listed above also supports the conclusion that registration is not punishment. [Citation.] Registration, although burdensome, does not seem to involve an affirmative disability or restraint, for it does not prevent the registrant from doing anything he could otherwise do. Government registration, at least in the abstract and considered apart from the shaming function of public disclosure, has not historically been regarded as a punishment. Registration does not solely promote retribution and deterrence, the traditional aims of punishment. There is an alternative purpose police access to known sex offenders after a sex crime has been committedto which the registration requirement may rationally be connected. Finally, the registration requirement does not appear excessive in relation to the alternative purpose. Two other factors weigh in the opposite directionregistration comes into play only on a finding of scienter, and the behavior to which it applies is already a crimebut these factors do not seem sufficient to turn registration into punishment."[4] (People v. Castellanos, supra, 21 Cal.4th at pp. 804-805, 88 Cal.Rptr.2d 346, 982 P.2d 211, fn. omitted.)
The following cases have all determined sex offender registration not to constitute punishment in the context of examining cruel and unusual punishment: Arizona v. Cameron (Ct.App.1996) 185 Ariz. 467, 469-470 [916 P.2d 1183] [Court of Appeals found registration not punishment as applied to misdemeanor public sexual indecency]; Illinois v. Adams (1991) 144 Ill.2d 381, 386-389 [163 Ill.Dec. 483, 581 N.E.2d 637]; Opinion of the Justices to the Senate (1996) 423 Mass. 1201, 1237-1239 [668 N.E.2d 738] [advisory opinion]; Meinders v. Weber (2000) 2000 SD 2 [604 N.W.2d 248, 262]; Snyder v. Wyoming (Wyo.1996) 912 P.2d 1127,1131; Cutshall v. Sundquist (6th Cir.1999) 193 F.3d 466, 477; Roe v. Farwell (D.Mass.1998) 999 F.Supp. 174, 192-193; Doe v. Weld (D.Mass.1996) 954 F.Supp. 425, 436; Lanni v. Engler (E.D.Mich.1998) 994 F.Supp. 849, 854-855.
We agree with the reasoning of the above-cited cases, and therefore, conclude that for the purpose of Eighth Amendment analysis, sex offender registration pursuant to section 290 is not punishment.

II. Article I, Section 17 of the California Constitution: Reed.

This does not end our inquiry. We must also determine the continuing viability of In re Reed. As we have discussed, in Castellanos six members of the California Supreme Court agreed that the analysis in Reed was incorrect insofar as it declared registration to be punishment, for an ex post facto analysis only. The three justices *568 who joined the concurring and dissenting opinion of Castellanos specifically held they were not calling the Reed decision into question insofar as it concludes section 290 registration is punishment under article I, section 17 of the California Constitution. Justice Mosk, in his dissenting opinion, concluded that section 290 registration is punishment. Therefore, a majority of our Supreme Court has not overruled Reed insofar as its analysis applies to the definition of punishment in article I, section 17 of the California Constitution. Because Reed has not been disapproved or overruled on state constitutional grounds, as an intermediate court we are bound to follow Reed's conclusion that registration is punishment. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 20 Cal.Rptr. 321, 369 P.2d 937.)[5]
We turn our analysis to the decision in Reed, which involved a conviction of section 647, subdivision (a). The court in Reed noted that "[b]y contemporary standards, the offenses for which persons may be convicted under section 647(a) are relatively minor." (In re Reed, supra, 33 Cal.3d at p. 923, 191 Cal.Rptr. 658, 663 P.2d 216.) The court noted the petitioner in Reed "is not the prototype of one who poses a grave threat to society; nor does his relatively simple sexual indiscretion place him in the ranks of those who commit more heinous registrable sex offenses." (Id. at p. 924, 191 Cal.Rptr. 658, 663 P.2d 216.) These observations were made as the Reed court applied the test set forth in In re Lynch (1972) 8 Cal.3d 410, 105 Cal. Rptr. 217, 503 P.2d 921, which held that a specific punishment may be cruel and unusual "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch, supra, at p. 424, 105 Cal.Rptr. 217, 503 P.2d 921, fn. omitted.)
The appropriate application of Lynch was set forth in In re DeBeque (1989) 212 Cal.App.3d 241, 248-249, 260 Cal.Rptr. 441, wherein the Court of Appeal stated:
"An exception to the registration requirement may occur, however, if the facts and circumstances of a given offense indicate the requirement would be cruel and/or unusual punishment and therefore prohibited under the federal and/or California constitutions. (People v. Monroe, supra, 168 Cal.App.3d [at p.] 1209, 215 Cal.Rptr. 51.)
"In analyzing a cruel and unusual punishment issue, it must be noted that `in our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments, and ... such questions are in the first instance for the judgment of the Legislature alone.' (In re Lynch [supra,] 8 Cal.3d [at p.] 414 [105 Cal.Rptr. 217, 503 P.2d 921].) The Legislature's power, however, is limited by the Eighth Amendment of the United States Constitution, and by article I, section 17 of the California Constitution; *569 both proscribe the imposition of cruel and unusual punishment. (People v. Rosenkrantz (1988) 198 Cal.App.3d 1187, 1205 [244 Cal.Rptr. 403]; People v. Almodovar (1987) 190 Cal.App.3d 732, 739 [235 Cal.Rptr. 616].) The ultimate determination whether a specific punishment on its face or as it is applied is cruel and unusual rests with the courts. (Ibid.)
"Our Supreme Court in In re Lynch, supra, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921 held a specific punishment may be cruel and unusual `if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (Id. at p. 424, 105 Cal.Rptr. 217, 503 P.2d 921, fn. omitted.) Lynch established a three-pronged test to aid the courts in determining whether a particular punishment is disproportionate to the offense for which it was imposed. As explained in People v. Almodovar, supra, 190 Cal. App.3d 732, 235 Cal.Rptr. 616: `Under the first prong [of the Lynch test], the court examines the nature of the offense and/or the offender, paying particular attention to the danger each poses to society. [Citation.] Secondly, the court may compare the challenged punishment with punishments prescribed for other, more serious, crimes in the same jurisdiction. [Citation.] Finally, the challenged penalty may be compared with punishments for the same offense in other jurisdictions. [Citation.]' (Id. at p. 740, 235 Cal.Rptr. 616.)
"Moreover, regarding the individual defendant claiming disproportionality, in People v. Dillon (1983) 34 Cal.3d 441, 480-481 [194 Cal.Rptr. 390, 668 P.2d 697], our Supreme Court stated that the offender's punishment must be tailored to his or her personal responsibility and moral guilt. Dillon stressed the nature of the offender when considering such culpability for an offense. [Citation.]" (In re DeBeque, supra, 212 Cal.App.3d at pp. 248-249, 260 Cal.Rptr. 441.)
In re DeBeque discussed at length the three prongs established in Lynch, supra:
"The three prongs of Lynch are not absolute rules establishing that a given punishment is cruel and unusual, but are merely guidelines to be used in testing the validity of a particular penalty. (In re Jones (1973) 35 Cal.App.3d 531, 541 [110 Cal.Rptr. 765]; People v. Almodovar, supra, 190 Cal.App.3d 732, 735, 235 Cal.Rptr. 616.) The importance of each prong depends on the specific facts of each case and application of the first prong alone may suffice in determining whether a punishment is cruel and unusual. (See People v. Dillon, supra, 34 Cal.3d at p. 479, 194 Cal.Rptr. 390, 668 P.2d 697.)
"In considering the first prong of Lynch, the nature of the offense and the offender, the court may take into account such factors as the defendant's motive, the way the offense was committed, the extent of the defendant's involvement, the consequences of the defendant's actions, along with facts relating to the defendant such as age, prior criminal record, personal characteristics, and state of mind. (People v. Dillon, supra, 34 Cal.3d at p. 475, 194 Cal.Rptr. 390, 668 P.2d 697; People v. Kelly (1986) 183 Cal.App.3d 1235, 1245 [228 Cal.Rptr. 681].)
"The major yardstick, however, in determining whether a punishment is cruel and unusual under the facts of a case, is whether it is `out of all proportion to the offense ...' (Robinson v. California (1962) 370 U.S. 660, 676 [8 L.Ed.2d 758, 768, 82 S.Ct. 1417]) so as to shock the conscience and offend fundamental notions of human dignity. (In re Lynch, supra, 8 Cal.3d at p. 424, 105 Cal.Rptr. 217, 503 P.2d 921.)" (In re DeBeque, supra, 212 Cal.App.3d at p. 249, 260 Cal.Rptr. 441.)
*570 Unlike the lewd conduct statute in Reed, supra, the instant petition involves a sex crime involving children. The defendant in DeBeque was convicted of a violation of section 647.6, annoying or molesting children under the age of 18. Citing People v. Monroe, supra, 168 Cal.App.3d 1205, 215 Cal.Rptr. 51 and People v. Tate (1985) 164 Cal.App.3d 133, 210 Cal.Rptr. 117, DeBeque noted: "`Children are a class of victims who require paramount protection and "[t]he fundamental legislative purpose underlying section 290 is to assure persons convicted of such a crime as molestation of children shall be readily available for police surveillance at all times."`" (In re DeBeque, supra, 212 Cal.App.3d at p. 251, 260 Cal.Rptr. 441.)
With that in mind, we now examine a violation of section 311.11 under the first prong of Lynch, supra. A conviction under section 311.11 requires knowledge "that the matter depicts a person under the age of 18 years, personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4 ...." (§ 311.11, subd. (a).) "Sexual conduct," in turn, means: "sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner...." (§ 311.4, subd. (d)(1).)
An examination of the petitioner in this matter reveals an individual who although a young, first offender, not only has an interest in possessing child pornography but has specifically expressed an interest in young boys, including "playing" with whom he believed to be a ten-year-old boy (John), and a willingness to pay for such activity. Additionally, the petitioner offered to "trade" John for an eight-year-old boy who was coming from Denver. (See Statement of Facts, supra.)[6] Clearly, the petitioner in this matter has more than a passing interest in possession of child pornography and poses a significant threat to society, based upon his own comments to the undercover police officer.
Turning to the second prong of Lynch, supra, we compare petitioner's punishment with the penalties imposed for more serious crimes in California. Section 290 mandates registration for all offenses dealing with the sexual conduct or exploitation of *571 children, i.e., sections 311.2, 311.3, 311.4 and 311.10, as well as serious and violent sexual crimes. We find that the Legislature is not failing to impose registration for more serious offenses involving children.
The final prong of the Lynch analysis mandates that we examine the registration requirement in light of the penalties for similar crimes, in different jurisdictions. A review of all statutes relating to sexual offenses against minors reveals that in a majority of the states, the crime of possession of child pornography is a felony. Thirty states hold the said offense to be a felony, as articulated by the pertinent statutes. Five states deem the crime a misdemeanor, as specified by state law. Moreover, five states consider the first offense to be a misdemeanor, and the second and subsequent offense of possession of child pornography a felony. In addition, while unclear or absent from the language of the statute, it appears, based on the severity of the penalty, that five other states consider the offense to be a felony and in six other states, the crime is a misdemeanor.
With respect to registration, thirty-two states mandate registration for sex offenders who have been convicted of either a sex crime against a minor, or more specifically, possession of child pornography. Eight states have imposed registration requirements on individuals convicted of offenses similar to possession of child pornography.[7]
We therefore conclude that registration for a violation of section 311.11 does not constitute cruel or unusual punishment under Lynch, supra.

DISPOSITION
For the foregoing reasons, the petition for a writ of habeas corpus is denied.
The Order to Show Cause issued on October 25, 2000, is discharged.
KITCHING, Acting P.J., and ALDRICH, J, concur.

*572 EXHIBIT A

 Possession of
State Code Child Pornography Penalty Registration Required?
Ala. Code §13A-12-192(b) 1 year & 1 day-10 NO (see §13A-11-200)
 Possession of Obscene years, ≤ $5,000
 Matter [minor under 17] Class C felony
Alaska Stat. § 11.61.127(d) ≤ 5 years and YES (§12.63.020(a)(2)
 Possession of Child $50,000 [15 year registration])
 Pornography Class C felony
Ariz. Rev. §13-3553(A)(1) 5 years YES (§ 13-3821(A)( 12))
Stat. Ann. Sexual Exploitation of Class 2 felony
 Minor; Possession of
 Material Depicting
 Sexually Explicit Conduct
 Involving Minor
Ark. Code §5-27-304(a)(2) 3-10 years, Registration required for
Ann. Pandering or Possessing ≤ $10,000 similar offense of using a
 Visual or Print Medium Class C felony (1st child to produce child
 Depicting Sexually offense); class B pornography (see § 12
 Explicit Conduct Involving felony (subsequent XX-XX-XXX(13)(A)(xii))
 Child offense)
Cal. Pen. §311.11(a) ≤ 1 year and/or YES (§290(a)(2))
Code ≤ $2,500
Colo. Rev. §18-6-403(b.5) Class 1 misd. (1st YES (§18-3-412.5(l)(b)(XI))
Stat. Ann. Sexual Exploitation of offense); class 4
 Children; Possessing or felony (subsequent
 Controlling Sexually offense)
 Exploitative Material for
 any Purpose
Conn. Gen. §53a-196d 1-5 years, ≤ $5,000 NO (see §54-251)
Stat. Ann. Possession of Child Class D felony
 Pornography
Del. Code 11 §1109(4) ≤ 1 year and YES (11 §4120;
Ann. Unlawful Dealing in Child ≤ $2,300 §4121(a)(4)a)
 Pornography; Intentional Class D felony
 Possession by Means of
 Computer

*573
D.C. Code §22-2001(a)(1)(E) ≤ $1,000 and/or YES(§13-137(3)(a)[10
Ann. Certain Obscene Activities ≤ 180 days(1st year registration])
 & Conduct; Possession of offense); $1,000-$5,000
 Filthy, Obscene Material and/or 6
 with Intent to Disseminate months-3 years
 [not exclusive to minors] (subsequent offense)
Fla. Stat. §827.071(5) ≤ 5 years; $5,000 YES
Ann. Sexual Performance by Felony of 3d degree (§775.21(4)(A)(l)(b))
 Child; Possessing Material
 Including Sexual Conduct
 by Child
Ga. Code §XX-XX-XXX(b)(8) ≤ $5,000 and/or NO (see §42-1-12(a)(4)(A)(vii))
Ann. Sexual Exploitation of ≤ 12 months prison
 Children; Simple Felony
 Possession of Material
 Depicting Minor in
 Sexually Explicit Conduct
Hawaii Rev. §707-751(1) ≤ 5 years Registration required for
Stat. Promoting Child Abuse in Class C felony a similar offense of
 Second Degree; Possession criminal sexual conduct
 or Dissemination of against a minor (§846E)
 Pornographic Material
 Containing Minor
Idaho Code §18-1507(3)(b) ≤ 15 years and/or YES(§18-8304(l)(a))
 Sexual Exploitation of ≤ $25,000
 Child for Commercial Felony
 Purpose; Possession of
 Sexually Exploitative
 Material Involving Minor
Ill. Comp. Ch. 720, §5/11-20.1(2) $1,000-$100,000 YES (ch. 730; §150/2,
Stat. Ann. Possession of Child Class 1 felony sec. 2(B)(1))
 Pornography with Intent to
 Disseminate [under 18]
Ind. Stat. §35-42-4-4-(c) 1-½ years; Registration required for
Ann. Possession of Sexually ≤ $10,000 dissemination of child
 Explicit Conduct Material Class A misd. pornography (§5-2-12-4)
 Involving Minor [under
 16]

*574
Iowa Code §728.12(3) $250-51,500 and YES (§692A.2(4))
Ann. Sexual Exploitation of ≤ 1 year
 Minor; Purchasing or Serious misd.
 Possession of Sexually
 Exploitative Material
 Involving Minor
Kan. Stat. §21-3516(a)(2) 2-3 year min. and 5-10 YES (§22-4902(a))
Ann. Sexual Exploitation of year max., ≤
 Child; Possession of $300,000
 Computer Generated Severity level 5,
 Material Depicting Child person felony
 under 18 in Sexual
 Conduct
Ky. Rev. Stat. §531.335 90 days-12 mos., NO (see §17.510)
Ann. Possession of Matter ≤$500
 Portraying Sexual Class A misd. (1st
 Performance by Minor offense), class D
 felony (subsequent
 offense)
La. Rev. Stat. §14:81.1(A)(3) ≤ $10,000 and 2-10 NO (see §15:540§15:549)
Ann. Pornography Involving years (no parole)
 Juveniles; Possession with
 Intent to Sell or Distribute
 [under 17]
Me. Rev. Stat. §2924(2) ≤ $2,500 and/or NO (see §11003)
Ann. Possession of Sexually ≤ 1 year
 Explicit Materials Class D crime (1st
 Depicting Minor under 14 offense); Class C
 crime (subsequent
 offense)
Md. Ann. Art. 27, §419B ≤ $2,500 and/or Registration required for
Code Possession of Visual ≤ 1 year crimes that are sexual
 Representation of Persons Misd. (1st or offenses against minors
 under 16 Engaged in subsequent offense) by their nature (art. 27,
 Sexual Acts §792(a)(6)(viii))

*575
Mass. Laws Ch. 272, §29C(vii) 5 years, or ≤ 2-½ NO (ch. 22C; §37)
Ann. Child Pornography; years and/or $1,000-$10,000
 Purchase or Possession of
 Material Depicting Sexual
 Conduct by Children
Mich. Stats. §28.342a ≤ 1 year and/or YES (§4.475(2)(d)(l))
Ann. Possession of Child ≤ $10,000
 Sexually Abusive Material Misd.
Minn. Stat. §617.247(4) ≤ 3 years and YES (§243.166, subd. 1(2))
Ann. Possession of ≤ $5,000
 Pornographic Work Felony
 Involving Minor
Miss. Code §97-5-33(5) $25,000-$100,000 YES (§45-33-25(1))
Ann. Exploitation of Children; and
 Possession of Material 2-20 years
 Depicting Child Engaging
 in Sexually Explicit
 Conduct
Mo. Rev. §573.037 6 mos. min, $1,000 Registration required for
Stat. Possession of Child Misd. (1st offense); similar offense of
 Pornography class D felony possession with intent to
 (subsequent offense) disseminate (§589.400)
Mont. Code §45-5-625(1)(e) ≤ $10,000 and/or YES (§XX-XX-XXX(6))
Ann. Sexual Abuse of Children; ≤ 10 years
 Possession of any Visual
 or Print Medium Depicting
 Children Engaged in
 Sexual Conduct
Neb. Rev. §28-813.01(1) 5 years and/or Registration required for
Stat. Ann. Possession of Visual $10,000 similar offense of
 Depiction of Sexually Class II misd. possession with intent to
 Explicit Conduct of Minor disseminate
 (§29-4003(1 )(a)(viii))
Nev. Rev. §200.730 1-6 years and YES (§179D.410(8))
Stat. Ann. Possession of Visual ≤ $5,000
 Presentation Depicting Category B felony
 Sexual Conduct of Person (1st offense)
 under 16

*576
N.H.Rev. §649-A:3 1-7 years, excl. fine YES (§651-B:l(V)(b))
Stat. Ann. Possession of Visual Felony
 Representation of Child
 Engaging in Sexual
 Activity
N.J. Stat. §2C:24-4b(4)(b) ≤ 18 mos. and/or YES (§2C:7-2 b(2))
Ann. Possessing or Viewing any ≤ $100,000
 Material Depicting Child Crime of 4th degree
 Engaging in Prohibited
 Sexual Act
N.M. Stat. §30-6A-3(A) 3 years and $5,000 YES (§29-llA-3(B)(4))
Ann. Sexual Exploitation of 3d degree felony
 Children; Possession with
 Intent to Distribute [under
 18)
N.Y. Consol. Art. 263, §263.16 ≤ 4 years NO (§168-a does not
Laws Possession of Sexual Class E felony mandate registration for
 Performance by Child child pornography)
 [under 16]
N.C. Gen. §14-190.17A 4-6 mos. com. YES (§14-208.6(5))
Stat. Third Degree Sexual service
 Exploitation of Minor; Class 1 felony
 Possession of such
 Material
N.D. Century §12.1-27.2-04.1 ≤ 1 year and/or YES(§12.1-32-15(l)(e))
Codes Possession of Certain $1,000
 Material Class A misd. (1st
 offense); class C
 felony (subsequent
 offense)
Ohio Rev. §2907.321(A)(5) Min. 18 mos., 2 YES (§2950.01(D)(2)(c))
Code Ann. Pandering Obscenity years, 30 mos., or 3
 Involving Minor; years. Max. 5 years,
 Possession of any Obscene ≤ $2,500
 Material Depicting Minor Felony of 4th degree
 (1st offense); felony
 of 3d degree
 (subsequent offense)

*577
Okla. Stat. §1021.2 ≤ 20 years and/or YES (57 §582(A))
Ann. Possession of Obscene or ≤ $25,000
 Indecent Material Felony
 Depicting Child under 18
Or. Rev. Stat. §163.686(l)(a)(A)(i) ≤ 10 years and/or YES(§181.594(2)(g))
 Encouraging Child Sexual ≤ $100,000
 Abuse in Second Degree; Class C felony
 Possession for Purpose of
 Arousing or Satisfying
 Sexual Desires of Self or
 other Person
Pa. Consol. §6312(D) $2,500-$15,000 NO (see §9793)
Stat. Sexual Abuse of Children; and/or ≤ 7 years
 Possession of Child Felony of 3d degree
 Pornography [under 18]
R.I. General §ll-31-10(b) $100-$1,000 YES (§11-37.1-3)
Laws Sale or Exhibition to and/or ≤ 2 years
 Minors of Indecent
 Publication, Pictures or
 Articles; Possession with
 Intent to Engage in Biz or
 Offer for Sale or
 Commercial Distribution
S.C. Code §XX-XX-XXX(A) ≤ 5 years YES (§23-3-430(C)(13))
Ann. Third Degree Sexual Felony
 Exploitation of Minor;
 Possession of Sexually
 Explicit Material of Minor
S.D. Codified §22-22-23.1 ≤ 2 years YES (§22-22-30(6); §22-22-31)
Laws Possession of Child and/or $2,000
 Pornography [under 18] Class 6 felony
Tenn. Code §XX-XX-XXXX 1-6 years YES (§XX-XX-XXX(3)(A)(vii))
Ann. Sexual Exploitation of and/or ≤ $3,000
 Minor; Possession of Class E felony
 Sexually Explicit Material
 Involving Minor

*578
Tex. Code Pen. Code §43.26(a) 2-10 years YES (Code Crim. Proc,
Ann. Possession or Promotion of and/or ≤ $10,000 art. 62.01 (5)(B))
 Child Pornography [under 18] [possession with
 intent to promote
 under subdivision
 (e) is a felony of
 2d degree]
Utah Code Crim. Code §76-5a-3(l) Min. 1 year and YES (Code Crim. Proc,
Ann. Sexual Exploitation of Minor; min. $5,000 §77-27-21.5(l)(d))
 Possession with Intent to Felony of 2d
 Distribute degree
Vt. Stat. 13 V.S.A. ch. 64, §2827(a) ≤ 2 years YES (13 V.S.A.
Ann. Possession of Child §5401(10)(B)(v))
 Pornography
Va. Code §18.2-374.1:1 ≤ 12 mos. Registration required for
Ann. Possession of Child and/or ≤ $2,500 similar offense of
 Pornography [under 18] Class 1 misd. (1st possession with intent to
 offense); class 6 distribute and for 2d
 felony offense of possession
 (subsequent (§19.2-298.1)
 offense)
Wash. Rev. §9.68A.070 ≤ 5 years NO (see §9A.44.130(9)(a))
Code Ann. Possession of Depictions of and/or ≤ $10,000
 Minor Engaged in Sexually Class C felony
 Explicit Conduct
W.Va. Code §61-8C-3 ≤ 2 years NO (see§15-12-2(a))
Ann. Distribution, Exhibition or and ≤ $2,000
 Possession of Material Felony
 Depicting Minors Engaged in
 Sexually Explicit Conduct
Wis. Stat. §948.12 ≤ 5 years Registration required for
Ann. Possession of Child and/or $10,000 similar offense of
 Pornography [under 18] Class E felony possession with intent to
 disseminate to a child
 (§301.45)
Wyo. Stat. §6-4-303(b)(iv) ≤ 10 years Registration required for
Ann. Sexual Exploitation of and/or ≤ $10,000 similar offense of
 Children; Possession of Child Felony possession with intent to
 Pornography disseminate (§7-19-301 (a))

NOTES
[*] Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] All references hereinafter are to the Penal Code unless otherwise noted.
[2] In 1985, the California Legislature amended section 290 to eliminate the registration requirements for a violation of section 647, subdivision (a).
[3] Because there was no majority opinion, none of the opinions can be cited as precedent. (Adoption of Kelsey S. (1992) 1 Cal.4th 816, 829, 4 Cal.Rptr.2d 615, 823 P.2d 1216, citing Del Mar Water, etc. Co. v. Eshleman (1914) 167 Cal. 666, 682, 140 P. 591; 9 Witkin, Cal. Procedure (4th ed. 1998) Appeal, § 974, pp. 1023-1025). Where appropriate, however, we will be guided by the analysis used in People v. Castellanos, supra.
[4] A conviction of section 311.11 does not require public disclosure under section 290.
[5] We note that some Court of Appeal decisions have emphasized that the holding of Reed, supra, should be limited to the facts. (See People v. King (1993) 16 Cal.App.4th 567, 572-575, 20 Cal.Rptr.2d 220; see also People v. Fioretti (1997) 54 Cal.App.4th 1209, 1215-1217, 63 Cal.Rptr.2d 367.) It has been noted that Reed, supra, dealt with a "`relatively simple sexual indiscretion' with no victim." (Id. at p. 1216, 191 Cal.Rptr. 658, 663 P.2d 216, quoting In re Reed, supra, 33 Cal.3d at p. 924, 191 Cal.Rptr. 658, 663 P.2d 216.) Moreover, at the time Reed, supra, was decided, "only three other states besides California had sex offender registration laws, all of which were less stringent than California's." (People v. Fioretti, supra, 54 Cal.App.4th at p. 1216, 63 Cal.Rptr.2d 367, citing In re Reed, supra, 33 Cal.3d at p. 925, 191 Cal.Rptr. 658, 663 P.2d 216.)
[6] We have taken judicial notice of two reports of Saul Niedorf, M.D., who examined the petitioner, pursuant to the condition of probation that he complete a program of therapy directed towards sexual deviancy, especially pedophilia. In his first report, Dr. Niedorf, without viewing the exhibits introduced into evidence at the petitioner's trial, opined that the petitioner did not fit the "profile ... of an exploiter of children or youth." We find it interesting that according to this report the petitioner described one of the exhibits as a "novelty greeting stationary sheet decorated with borders of small nude male figures. ..." In fact, the pictures on this exhibit depict not only nude pictures of young boys, but also pictures of young boys engaged in oral and anal sex. (See Statement of Facts, supra.)

After receiving this report, the prosecutor in the case sent Dr. Niedorf copies of the exhibits introduced at trial. Dr. Niedorf felt it important that the exhibits showed post-pubescent boys, instead of pre-pubescent boys. Dr. Niedorf did not change his original diagnosis of the petitioner.
We note that because these reports were prepared post-trial, Dr. Niedorf was never cross-examined as to his opinion, nor did the People have the opportunity to present their own experts. We will consider Dr. Niedorf's opinion in light of the evidence presented during the trial in this matter, and will accord to it the weight to which it is entitled.
[7] As a part of their brief, respondent prepared a chart, setting forth a state-by-state analysis of punishment for the same or similar crimes as the one petitioner was convicted of. We have reviewed and corrected it where appropriate, and attach it hereto as Appendix "A."