107 Cal.Rptr.2d 752 (2001)
89 Cal.App.4th 946
In re WALTER S., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Walter S., Defendant and Appellant.
No. B144386.
Court of Appeal, Second District, Division Two.
June 6, 2001.
As Modified on Denial of Rehearing July 2, 2001.
Review Granted September 19, 2001.
*754 Edward J. Haggerty, City of Industry, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Scott J. Quan, Deputy Attorneys General, for Plaintiff and Respondent.
*753 BOREN, P.J.
Walter S. appeals from the order declaring him a ward of the court (Welf. & Inst.Code, § 602) by reason of his possession of a sawed-off shotgun (Pen.Code, § 12020, subd. (a)(1)) for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members (Pen.Code, § 186.22, subd. (b)(1)). He also appeals from the dispositional order placing him in a camp-community-placement program with physical confinement not to exceed six years and ordering him to make restitution to the person in whose stolen car appellant possessed the shotgun and to register pursuant to Penal Code section 186.30 as a gang offender.
Appellant contends (1) that there was insufficient evidence to support the finding that he possessed the sawed-off shotgun with the specific intent to promote, further, or assist any criminal conduct by gang members; (2) that the provision in Penal Code section 186.32, subdivision (a)(1)(C) that a juvenile required to register as a gang offender must sign a written statement "giving any information that may be required by the law enforcement agency" is unconstitutionally vague; (3) that the same provision is overbroad because (a) it violates the right of privacy under the California Constitution, (b) it violates the First Amendment right to freedom of association, and (c) it violates the privilege against self-incrimination; (4) that the registration requirement constitutes cruel or unusual punishment in violation of the California Constitution; (5) that the registration order and use of the gang enhancement to calculate appellant's maximum period of confinement constitute multiple punishment in violation of Penal Code section 654; and (6) that the trial court erred in ordering appellant to make restitution to the victim of the car theft.

FACTS
Ovidio Rivas Rauda (Rivas) testified that about 2:40 a.m. on June 30, 2000, when he was sitting in his car in his garage in Northridge, a car drove by and stopped. Two people got out. Both people approached Rivas. Rivas noticed that one of the people was male. The male pointed a gun at Rivas. One of the people said, "[`]I need your car.[`]" The male placed the gun against his shoulder and held the end of the gun with his other hand. Rivas was ordered out of his car. He got out of the car, leaving the engine running. Rivas was then told to hold onto the posts of the garage and not to move. Rivas's wallet, which contained about $50, was taken, and his car was driven away. When Rivas got his car back, the steering column was damaged, the windshield was cracked, the car was dented, and Rivas's tools, cassettes, lamp, briefcase, and eyeglasses were missing.
Rivas had to pay $300 to get the steering column repaired, and he received an estimate that repairs for the other damage would cost about $800. Rivas's tools were worth about $700. Rivas lost wages because of the car theft, and he had to pay $225 to get his car "out of impound." His total loss was $2,700.
*755 Inglewood Police Officer Marie Becerra testified that about 6:17 p.m. on June 30, 2000, she saw appellant and Steven P.G. driving by in Rivas's car. Appellant, the passenger, waved at Officer Becerra and her partner. Officer Becerra's partner began to make a U-turn to stop Steven and appellant for not wearing seatbelts. Steven accelerated at a high speed and ran a stop sign. The vehicle stopped in the middle of the road, and Steven and appellant ran in opposite directions. A sawed-off shotgun was on the floorboard in the front on the passenger side, and a red rag was wrapped around a broken steering column.
After appellant was arrested, he was advised of and waived his rights under Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (Miranda). Appellant said that Steven, also known as Little Payaso, was the driver. Appellant was not involved in the taking of the car. He knew, however, that Malditos gang members had taken the car. Appellant is a member of the Malditos gang, and he is also known as Toker. About 12:30 p.m. on June 30, 2000, when appellant was in front of his home in Inglewood, Steven drove up in the car. A group of Malditos gang members were in the car with Steven, and appellant got into the car and "went cruising around." The shotgun was already in the car. Later, other homeboys got out of the car until Steven and appellant were the only occupants. The shotgun belonged to appellant's homeboy Oso.
Officer Becerra's partner, Inglewood Police Officer Marya Kametani, testified that after appellant was advised of and waived his rights under Miranda, appellant said that Little Payaso had asked appellant to use the shotgun to "blast" the officers. Appellant had then been holding the shotgun between his legs. Appellant decided not to shoot the officers, because he was afraid that, if he did so, he would be killed. He therefore told Little Payaso, "[`]Let's just run.[`]"
Officer Kametani checked the shotgun and noted that the safety was off and that there were two ".00 shotgun rounds" in the chamber. Those shotgun rounds are extremely powerful.
Inglewood Police Detective Nelson Arriaga, a gang expert, testified that the Malditos gang is a Hispanic gang in Inglewood, Lancaster, and Long Beach with about 200 members. The Malditos gang is involved in many crimes, including robberies, murders, attempted murders, narcotics deals, weapons violations, carjackings, and other auto thefts. One Malditos member, Alberto M., also known as Droopy, has two brothers who are Malditos gang members and have been arrested on at least two occasions for narcotics and assault weapons violations. In March 2000, it was adjudicated that he possessed cocaine base for sale. Saul R., another Malditos gang member, was adjudicated to have committed attempted murder. Appellant and Steven had admitted to Officer Arriaga that they are Malditos gang members.
The prosecutor asked Detective Arriaga to assume the following facts: About 2:40 a.m. on June 30, 2000, two people believed to be Malditos gang members used a sawed-off shotgun to take a vehicle from a male. About 6:17 p.m. that same day, two Malditos gang members who knew the car had been carjacked by fellow Malditos gang members drove by the police in that vehicle, and the passenger waved at the police. When the police followed the vehicle, the driver sped away and ran a stop sign. The driver told the front seat passenger to take the sawed-off shotgun in his lap and "blast" the officers. The passenger suggested that they run instead. There was a red bandanna wrapped around a broken steering column.
Assuming those facts to be true, Detective Arriaga opined that the driver took the vehicle in association with, at the direction of, or for the benefit of the Malditos gang, because the driver and passenger were active participants in the gang.
*756 The prosecutor then asked Detective Arriaga to assume that the front seat passenger held the shotgun and disobeyed a command to "blast" the officers. Detective Arriaga opined that, under those circumstances, the passenger possessed the sawed-off shotgun in the presence of other Malditos gang members in association with, at the direction of, or for the benefit of the Malditos gang despite the passenger's refusal to shoot the officers, because the passenger participated in and associated with the gang and the possession benefited him by earning him respect from fellow gang members.
The court received in evidence by reference certified court documents reflecting a finding that Saul R. was declared a ward of the court (Welf. & Inst.Code, § 602) because he committed attempted murder in 1999 and a finding that in another case Alberto M. was declared a ward of the court (ibid.) because on February 18, 2000, he possessed cocaine base for sale, possessed marijuana or hashish for sale, and committed firearm offenses.

DISCUSSION

1. Substantial Evidence That Appellant Possessed the Sawed-off Shotgun to Promote, Further, or Assist Criminal Conduct by Gang Members
We view the evidence in the light most favorable to the juvenile court's findings. (In re Dennis B. (1976) 18 Cal.3d 687, 697, 135 Cal.Rptr. 82, 557 P.2d 514.) So viewed, the evidence that appellant held a loaded sawed-off shotgun between his legs while riding with another Malditos gang member in a car appellant knew had been carjacked earlier that day by Malditos gang members and Detective Arriaga's testimony constitute substantial evidence that appellant possessed the sawed-off shotgun for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members. (See People v. Ortiz (1997) 57 Cal.App.4th 480, 484-485, 67 Cal. Rptr.2d 126; In re Ramon T. (1997) 57 Cal.App.4th 201, 207-208, 66 Cal.Rptr.2d 816; People v. Olguin (1994) 31 Cal. App.4th 1355, 1382-1383, 37 Cal.Rptr.2d 596.)

2. Vagueness
Penal Code section 186.30 was added by the initiative measure Proposition 21 in the March 7, 2000, Primary Election (Proposition 21).[1] Penal Code section 186.30 provides in pertinent part that a minor who has had a petition sustained in juvenile court for a crime as to which the criminal street gang enhancement of Penal Code section 186.22, subdivision (b) was found true must register as a gang offender within 10 days after the minor's release from custody or change of residence.[2]
Penal Code section 186.32, subdivision (a)(1)(C), also added by Proposition 21, provides that when the juvenile registers, *757 "[a] written statement signed by the juvenile, giving any information that may be required by the law enforcement agency, shall be submitted to the law enforcement agency." Adult registration under Penal Code section 186.30 has the same requirement. (Pen.Code, § 186.32, subd. (a)(2)(C).) Penal Code section 186.33, also added by Proposition 21, provides that a knowing violation of Penal Code section 186.30 is a misdemeanor and, if the person who knowingly violated section 186.30 is later convicted of or found in a juvenile wardship proceeding to have committed any offense specified in section 186.30, the registration violation is punishable by an enhancement of 16 months, two years, or three years.
Appellant contends that the requirement that the juvenile provide "any" information that may be required by the law enforcement agency is unconstitutionally vague, because it permits arbitrary and discriminatory enforcement. Respondent proposes that the language be construed to require "any information `reasonably related to criminal street gang activity.'" In his reply brief, appellant requested that we adopt that limiting construction and asserted that if the limiting construction proposed by respondent is adopted, section 186.32 would not be unconstitutionally vague or overbroad.
Our Supreme Court has explained: "A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness." (People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1116, 60 Cal.Rptr.2d 277, 929 P.2d 596 (Acuna).) A statute will not be held void for vagueness if "`any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources.'" (Id. at p. 1117, 60 Cal. Rptr.2d 277, 929 P.2d 596.)
"`Registration requirements generally are based on the assumption that persons convicted of [or adjudicated of having committed] certain offenses are more likely to repeat the crimes and that law enforcement's ability to prevent certain crimes and its ability to apprehend certain types of criminals will be improved if these repeat offenders' whereabouts are known. [Citation.] Accordingly, the Legislature has determined that sex offenders (Pen .Code, § 290), narcotics offenders (Health & Saf.Code, § 11590) and arsonists (Pen.Code, § 457.1) are likely to repeat their offenses and therefore are subject to registration requirements.' [Citation.]" (In re Luisa Z. (2000) 78 Cal.App.4th 978, 982, 93 Cal.Rptr.2d 231 (Luisa Z.); accord, People v. Castellanos (1999) 21 Cal.4th 785, 796, 88 Cal.Rptr.2d 346, 982 P.2d 211 ["`"[t]he purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future"'"]; People v. Villela (1994) 25 Cal.App.4th 54, 60, 30 Cal.Rptr.2d 253 ["the purpose of drug offender registration, as with sex offender registration, is to `deter recidivism by facilitating the apprehension of past offenders'"].)
Each of the registration statutes mentioned in Luisa Z. contains language similar to the language appellant challenges as unconstitutionally vague. Penal Code section 290, subdivision (e)(2)(A) provides that a sex offender who is required to register under section 290 must make a signed statement "giving information as shall be required by the Department of Justice and giving the name and address of the person's employer, and the address of the person's place of employment if that is different from the employer's main address." Penal Code section 290, subdivision (m) provides that if a peace officer *758 reasonably suspects a person may be at risk from a sex offender convicted of certain specified crimes, the officer may disclose to community members who may be at risk the offender's name, known aliases, gender, race, physical description, date of birth, and address, the description and license plate number of the offender's vehicles or vehicles the offender is known to drive, and relevant parole or probation conditions. Health and Safety Code section 11594 states that a person who is required to register as a narcotics offender must provide a signed written statement "giving such information as may be required by the Department of Justice." Penal Code section 457.1, subdivision (f) provides that a person required to register as an arsonist must make a signed written statement "giving the information as may be required by the Department of Justice."
Section 2 of Proposition 21 notes that criminal street gangs "pose a significant threat to public safety" (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (b), p. 119), asserts that, without adequate intervention, the problem of gang violence will increase (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (d), p. 119), declares that dramatic changes are needed in the way California treats criminal street gangs if we are to avoid a surge in gang violence (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (k), p. 119), and states that the purpose of Proposition 21 is to increase public safety (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (k), p. 119).
In view of the underlying purposes of Proposition 21 and offender registration statutes, we construe the requirement of Penal Code section 186.32, subdivision (a)(1)(C) that a gang offender required to register under Penal Code section 186.30 make a signed written statement "giving any information that may be required by the law enforcement agency" (Pen.Code, § 186.32, subds.(a)(1)(C), (a)(2)(C)) as meaning that the gang offender must provide information necessary for the law enforcement agency to locate the offender, such as the person's full name, any aliases, the person's date of birth, the person's residence, the description and license plate number of any vehicle the person owns or drives, and information regarding any employment the person has. So construed, the provision does not permit arbitrary and discriminatory enforcement. (See Williams v. Garcetti (1993) 5 Cal.4th 561, 575-577, 20 Cal.Rptr.2d 341, 853 P.2d 507.)[3]
We do not adopt the broader limiting construction respondent proposes, because a requirement that the registrant provide "any information `reasonably related to criminal street gang activity'" could subject the registrant to a risk of self-incrimination. (Cf. Albertson v. SACB (1965) 382 U.S. 70, 77-78, 86 S.Ct. 194, 15 L.Ed.2d 165 [person could not be compelled to admit membership in or association with Communist Party].)

3. Overbreadth
Appellant contends that, as written, the requirement of Penal Code section 186.32 that the juvenile provide any information required by the law enforcement agency is overbroad because it infringes on the First Amendment right to freedom of association and the right of privacy guaranteed by the California Constitution and threatens the privilege against self-incrimination. As we have construed section 186.32, that provision does not suffer from any of these defects. (See Acuna, supra, 14 Cal.4th at p. 1112, 60 Cal.Rptr.2d 277, 929 P.2d 596 [freedom of association]; People v. Hove (1992) 7 Cal.App.4th 1003, *759 1005-1007, 9 Cal.Rptr.2d 295 [right of privacy]; Marchetti v. United States (1968) 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 [privilege against self-incrimination].)

4. Cruel or Unusual Punishment
In In re Reed (1983) 33 Cal.3d 914, 919-922, 191 Cal.Rptr. 658, 663 P.2d 216 (Reed), the California Supreme Court held that the requirement to register as a convicted sex offender is punishment within the meaning of the prohibition of California Constitution, article 1, section 17 against cruel or unusual punishment. That holding has never been overruled.
In People v. Castellanos (1999) 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211, the lead opinion concluded that the requirement to register as a sex offender is not punishment within the meaning of the prohibition in the federal and California Constitutions against ex post facto laws. (Castellanos, supra, 21 Cal.4th at pp. 789-799, 88 Cal.Rptr.2d 346, 982 P.2d 211 (lead opn. of George, C.J.).) In a concurring and dissenting opinion, Justice Kennard noted that sex offender registration may be punishment for purposes of article I, section 17 of the California Constitution. (Id. at p. 805, 88 Cal.Rptr.2d 346, 982 P.2d 211.) Recently, in People v. Ansell (2001) 25 Cal.4th 868, 108 Cal.Rptr.2d 145, 24 P.3d 1174, the California Supreme Court unanimously held that an amendment to the procedure for certificates of rehabilitation that made such a certificate unavailable to persons convicted of particular sex offenses does not violate the prohibition of the federal and California Constitutions against ex post facto laws. (Ansell, supra, at pp. 883-893, 108 Cal.Rptr.2d at pp. 157-165, 24 P.3d at pp. 1183-1190.) The court noted that a majority of the California Supreme Court had agreed in Castellanos that registration laws have traditionally not been viewed as criminal or penal in nature. (Ansell, supra, at p. 886, 108 Cal. Rptr.2d at p. 159, 24 P.3d at p. 1186.)
In In re Alva (2001) 89 Cal.App.4th 758, 107 Cal.Rptr.2d 562, Division Three of this court held that since Reed has not been overruled, the requirement to register as a sex offender is punishment within the meaning of the prohibition in the California Constitution against cruel or unusual punishment. (Alva, supra, at p. 766, 107 Cal.Rptr.2d at pp. 567-568.) Alva also held, however, that the requirement to register as a convicted sex offender for possession of child pornography in violation of Penal Code section 311.11, subdivision (a) does not constitute cruel or unusual punishment within the meaning of the prohibition in the California Constitution against cruel or unusual punishment.
Based on the holding in Reed, we conclude that the requirement to register as a gang offender is punishment within the meaning of the prohibition against cruel or unusual punishment in California Constitution, article I, section 17.
A punishment may violate the prohibition of article I, section 17 (formerly § 6), of the California Constitution against cruel or unusual punishment if, although not cruel or unusual in its method, "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch (1972) 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921, fn. omitted.) In Lynch the court noted three techniques that may be used to determine whether a punishment is cruel or unusual: an examination of the nature of the offense and the offender; a comparison of the challenged penalty with punishments prescribed in California for more serious offenses; and a comparison of the challenged penalty with punishments prescribed for the same offense in other jurisdictions. (Id. at pp. 425-427, 105 Cal.Rptr. 217, 503 P.2d 921.) A determination whether a punishment is cruel or unusual may be based solely on an examination of the nature of the offense and the offender. (People v. Weddle (1991) 1 Cal. App.4th 1190, 1196, 1198, 2 Cal.Rptr.2d 714.)
*760 Appellant's possession of a sawed-off shotgun with the safety off and two extremely powerful rounds in the chamber while riding with fellow gang members in a car he knew had been taken in a carjacking was extremely dangerous conduct. Under these circumstances, the requirement that appellant register as a gang offender does not shock the conscience or offend fundamental notions of human dignity.

5. Multiple Punishment
Penal Code section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision...." Penal Code section 654 applies in juvenile wardship proceedings. (In re Michael B. (1980) 28 Cal.3d 548, 556, fn. 3, 169 Cal.Rptr. 723, 620 P.2d 173.) A statute may create an exception to Penal Code section 654 without expressly referring to Penal Code section 654. (People v. Benson (1998) 18 Cal.4th 24, 32, 74 Cal. Rptr.2d 294, 954 P.2d 557.)
In determining whether Penal Code section 186.30 created an exception to Penal Code section 654, we consider the language of Proposition 21 to effectuate the intent of the voters. (People v. Thomas (1999) 21 Cal.4th 1122, 1125, 90 Cal. Rptr.2d 642, 988 P.2d 563; People v. Dotson (1997) 16 Cal.4th 547, 554, 556, 66 Cal.Rptr.2d 423, 941 P.2d 56.) Section 2, subdivision (h) of Proposition 21 states in pertinent part: "Gang-related crimes pose a unique threat to the public because of gang members' organization and solidarity. Gang-related felonies should result in severe penalties...." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (h), p. 119.) That language indicates that, in adopting Proposition 21, the voters intended the registration requirement to be in addition to imposition of the enhancement for gang-related offenses. We therefore conclude that by requiring that any person who has been convicted of or had a wardship petition sustained for the commission of a crime in which the enhancement allegation specified in Penal Code section 186.22, subdivision (b) has been found true must register as a gang offender, Penal Code section 186.30 has created an exception to Penal Code section 654.

6. Restitution
Welfare and Institutions Code section 730.6, subdivision (a)(1) provides: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." Welfare and Institutions Code section 730.6, subdivision (a)(2)(B) provides that, on finding a minor a ward of the court pursuant to Welfare and Institutions Code section 602, the court shall order the minor to pay restitution to any victim.
A victim is a "`person who is the object of a crime....' [Citation.]" (People v. Crow (1993) 6 Cal.4th 952, 957, 26 Cal. Rptr.2d 1, 864 P.2d 80.) Appellant was found to be a ward of the court based on his possession of a sawed-off shotgun. He was not charged with or found to have committed the theft of Rivas's car or to have committed any crime against Rivas. The juvenile court therefore erred in ordering appellant to pay restitution to Rivas. (Welf. & Inst.Code, § 730.6, subd. (a)(2)(B); In re Maxwell C. (1984) 159 Cal.App.3d 263, 265-266, 205 Cal.Rptr. 310 [due process precludes restitution order for offense with which minor was not charged and which minor was not found to have committed].)

*761 DISPOSITION
The order of wardship is affirmed. The dispositional order is modified to strike the condition that appellant make restitution to Ovidio Rivas Rauda. As modified, the dispositional order is affirmed.
NOTT, J. and COOPER, J, concur.
NOTES
[1] Proposition 21 is known as the Gang Violence and Juvenile Crime Prevention Act of 1998.
[2] Penal Code section 186.30 provides: "(a) Any person described in subdivision (b) shall register with the chief of police of the city in which he or she resides, or the sheriff of the county if he or she resides in an unincorporated area, within 10 days of release from custody or within 10 days of his or her arrival in any city, county, or city and county to reside there, whichever occurs first. [¶] (b) Subdivision (a) shall apply to any person convicted in a criminal court or who has had a petition sustained in a juvenile court in this state for any of the following offenses: [¶] (1) Subdivision (a) of Section 186.22. [U] (2) Any crime where the enhancement specified in subdivision (b) of Section 186.22 is found to be true. [¶] (3) Any crime that the court finds is gang related at the time of sentencing or disposition."
[3] At oral argument, appellant conceded that this limiting construction is consistent with the purposes of Proposition 21 and that, with this limiting construction, the registration requirement of Proposition 21 is not unconstitutionally vague.